119 N.J. Super. 7 (1972)
289 A.2d 551
JOHN EVO, PLAINTIFF,
v.
JOMAC, INC., A CORPORATION OF THE STATE OF PENNSYLVANIA AND THE FIRST PENNSYLVANIA BANKING AND TRUST COMPANY, ETC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 23, 1972.
*9 Mr. Aaron W. Nussman for plaintiff (Messrs. Back & Nussman, attorneys; Mr. Patrick J. Kelly on the brief).
*10 Mr. Edward V. Ryan for defendants (Mr. Edward V. Ryan and Mr. Reeder R. Fox of the Pennsylvania Bar on the brief).
LARNER, A.J.S.C.
Plaintiff was employed by Jomac, Inc., a national company based in Pennsylvania, in various capacities between November 1951 and November 1967. Initially he was hired as a salesman and in 1954 became district manager for sales of defendant's products in a territory including northern New Jersey, New York City and lower New York State. In 1959, he became sales manager for the roller division of the company, a division which manufactured and sold rollers for use in the process of printing on metal and other surfaces. Plaintiff continued in this capacity until February 1967 when he was designated accounts manager with a change in his mode of compensation. This position involved the servicing of several of the largest accounts of the roller division, including plants of American Can Co., Continental Can Co., National Can Co., and Crown Cork Co. in New Jersey and the New York metropolitan area.
In 1967 the executives of the company became dissatisfied with plaintiff's conduct, and after some discussion in November of that year he submitted his resignation at the request of the vice-president of the company. He was granted severance pay until the end of February 1968.
In June 1968 plaintiff went to work for William Recht Co. as a salesman in the northern New Jersey and New York metropolitan area, engaged in the sale of rubber printing blankets, inks and chemicals. However, in May 1969 a company known as Durex Industries was formed by Recht or its principals in a joint venture with Southern Rubber Co. This new company manufactured and sold rollers of the type handled by Jomac and sold by plaintiff while employed by Jomac. There is no question that Durex was and is in a line of business in direct competition with Jomac.
*11 Although plaintiff has remained nominally as an employee of Recht, he has engaged in selling on a commission basis the competitive products of Durex. In fact he has acted as sales manager for both companies, and has even solicited and obtained business from some of the major customers of Jomac which were assigned to him in his capacity as Jomac's accounts manager.
The plaintiff seeks recovery from Jomac's Employees Profit Sharing Plan of such moneys and benefits accruing to him as a result of the termination of his employment with defendant in November 1967.
When plaintiff commenced his employment with Jomac in 1951 there was in existence a pension plan for which he was eligible which provided for certain retirement benefits and insurance coverage and which called for contributions by the employer and employee. He remained a member of this pension plan until 1960. As of June 30, 1960, the company unilaterally inaugurated a new retirement plan for the benefit of its employees, pegged to the profits of the company, which was designated as a "Profit-Sharing Plan."
Under this new plan, the vested accumulations in the old pension fund and the cash value of insurance policies were automatically credited to the account of the employee in the new profit sharing plan. The new plan did not require contributions by employees, except that voluntary contributions could be made by way of increase of the employee's interest in the ultimate available fund. In addition to payment from the plan upon retirement at age 65, there was also a provision for payment of benefits upon severance before the retirement age, based upon a schedule of the number of years of service. In any event, plaintiff's service in the company for 16 years made him eligible for full benefits which would become payable at age 65, with the discretionary power of the supervising committee to authorize payment before that time.
*12 If the profit-sharing plan had remained in the same form as adopted in 1960, plaintiff admittedly would be entitled to the accumulations upon reaching age 65, as well as the benefits under the insurance policy which was maintained by the payment of premiums throughout the years of employment.
The controversy between the parties arises, however, because of an amendment to the profit-sharing plan adopted by the company in 1966. By this amendment the company provided that "notwithstanding any other provision of the plan, the amount payable to any former employee" whose employment has been severed prior to age 65 shall be terminated by the board of directors in the event that the employee shall at any time "engage in any activity which, in the judgment of the Board of Directors is in competition with the company's business, and in such event, such former employee shall have no further rights under the plan and shall forfeit all benefits theretofore vested in him."
Defendant concluded that plaintiff's employment with Recht and Durex was in competition with its business and that the aforesaid amendment justified its refusal to pay any benefits to plaintiff.
The court finds from the evidence that plaintiff has been engaged in business activity in direct competition with Jomac, and that the determination by the board of directors to that effect is fully supported by the facts. Thus, if the 1966 amendment to the plan is valid and enforceable, plaintiff would be barred from recovery.
Initially, plaintiff attacks the validity of the forfeiture clause on the basis that it constitutes a noncompetitive covenant which is unreasonable because it is limitless as to time and area. Hudson Foam Latex Products, Inc. v. Aiken, 82 N.J. Super. 508 (App. Div. 1964); Magic Fingers, Inc. v. Robins, 86 N.J. Super. 236 (Ch. Div. 1965). This contention is founded upon a misconception of the effect of the clause in the context of the profit-sharing plan. The inclusion of this clause does not restrict the right of the employee to engage in any employment or business activity in competition *13 with Jomac and Jomac does not seek to restrain him from doing so. The restrictive clause merely creates a choice for the employee. If he desires to compete, he gives up the plan benefits; if he wishes to retain the benefits, he must comply with the imposed conditions. Such an available choice removes the condition from the proscription of the public policy underlying covenants which unreasonably restrain an employee from earning a livelihood. Barr v. Sun Life Assurance Co., 146 Fla. 55, 200 So. 240 (Sup. Ct. 1941); Brown Stove Works, Inc. v. Kimsey, 119 Ga. App. 453, 167 S.E.2d 693 (App. Ct. 1969); Flynn v. Murphy, 350 Mass. 352, 215 N.E.2d 109 (Sup. Jud. Ct. 1966); Simons v. Fried, 302 N.Y. 323, 98 N.E.2d 456 (Ct. App. 1951); Kristt v. Whelan, 4 A.D.2d 195, 164 N.Y.S.2d 239 (App. Div. 1957), aff'd 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (Ct. App. 1958).
In fact, since the evidence demonstrates that the plan was adopted in Pennsylvania for a company and its employees who operated out of Pennsylvania and with a plaintiff who resided in that state while he performed as accounts manager, it is manifest that pursuant to either the traditional conflict of laws principle of lex loci contractus or the more recently evolving test of the application of the law of the state with the most significant relationship to the transaction and the parties, any substantive rights arising under the plan are measured by the law of Pennsylvania. Lewis v. Atlas Corporation, 158 F.2d 599, 601 (3 Cir.1946); Cockrell v. McKenna, 104 N.J.L. 592, 593 (E. & A. 1928); Keifhaber v. Yannelli, 9 N.J. Super. 139, 141-142 (App. Div. 1950); Avery v. Sielcken-Schwarz, 5 N.J. Super. 195, 199 (App. Div. 1949); Ray v. Beneficial Finance Co., 92 N.J. Super. 519, 530 (Ch. Div. 1966); Restatement, Conflicts of Laws 2d, § 188 (1969).
The opinion of the Pennsylvania Supreme Court in Garner v. Girard Trust Bank, 442 Pa. 166, 275 A.2d 359 (1971), clearly supports the enforceability of the restrictive condition so long as the determination by the company as to *14 the actuality of competition is not made arbitrarily. In view of the conclusion by this court that the board of directors was reasonably justified in finding that plaintiff did engage in competitive activity, the forfeiture provision in the plan would normally be enforceable.
However, the enforceability of the provision against plaintiff in this case involves other legal impediments brought about by the fact that neither the prior pension plan nor the profit-sharing plan when originally adopted in 1960 contained the forfeiture clause at issue.
The correlative rights and obligations of the employee and employer under both the pension and profit-sharing plans are governed by ordinary contract principles. These plans do not constitute mere gratuities on the part of the employer to be granted or withdrawn at the whim or largesse of the employer. The plans exist as a means of at tracting and retaining employees and their continued loyal and faithful service The employer not only gains this benefit but also qualifies thereby for favorable tax treatment by the Internal Revenue Service. In effect, the sums payable in the future are no less than deferred compensation for services rendered during the period of employment. As a consequence, "when the employee renders service in response to the promise of the trust plan, he acquires a right no less contractual than if the plan were expressly bargained for." Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 35 (1967). See also Renshaw v. United States Pipe & Foundry Co., 30 N.J. 458 (1959); Annotations, 81 A.L.R.2d 1066, 1070 (1962) and 42 A.L.R.2d 461, 463 (1955). This concept should be applied herein, for the recognition of a pension plan as a contract between employer and employee is implicit in the Pennsylvania cases interpreting the effect of restrictive conditions in such plans (see Garner, supra); and no Pennsylvania case has been cited to the contrary.
With an assumption that the determination of plaintiff's rights must be governed by principles of contract law, the court is called upon to determine whether the 1966 amendment *15 can be applied to rights or benefits acquired prior to its adoption.
The first issue on this score is whether the benefits that had accrued to plaintiff under the old pension plan can be affected by the forfeiture clause adopted 15 years after he commenced his employment with defendant. For the answer to this query we need but turn to the representations made to employees when the change-over to the profit-sharing plan occurred in 1960.
In the document distributed to employees explaining the reasons for and the effect of the new plan, the company pointed out:
Your insurance policy contracts and your share of remaining assets will be considered your initial credit in the profit sharing plan. [Sec. A, p. 6]
A participant whose employment is terminated for reasons other than retirement, death, or total disability will be entitled to all assets transferred to his account from the pension plan, plus * * * [other benefits under the profit sharing plan] [Sec. A, p. 8]
IMPORTANT NOTICE TO PARTICIPANTS IN THE PENSION PLAN
Within six months the old Jomac Pension Plan will be replaced by the Jomac Profit-Sharing Plan. This does not mean, however, that you will lose your vested interest in the Pension Plan.
In the confines of the legal document entitled "Jomac, Inc. Profit Sharing Plan," section C, paragraph 6.3, there is the unequivocal statement:
The interest of a participant in policy contracts and other assets transferred from the pension trust shall be fully vested.
In view of these provisions it is manifest that the parties intended that the vested rights of employees in the existing pension plan would be preserved and protected from any inroads by virtue of the new profit sharing plan. And these rights could not be eliminated or reduced through the future operation of the profit-sharing plan or any subsequent amendments thereto. There is nothing in the documents in evidence *16 which can be construed as a waiver of these rights by the employee through the mere adoption of the profit sharing plan. Thus, whatever accumulations were credited to plaintiff in the pension plan as of June 30, 1960, when the profit-sharing plan was adopted, must be made available to him, together with the cash surrender value of the insurance to his credit as of that date.
But this does not dispose of the entire controversy since there still remains for resolution the effect of the 1966 amendment on accumulations and benefits which accrued between June 30, 1960 and March 25, 1966 (date of amendment of plan) and accumulations which accrued between March 25, 1966 and November 1967 when plaintiff's services were terminated.
The amendment of the plan was adopted pursuant to the right of amendment reserved in the basic document (Art. 13.1) which provided:
The Plan may be amended, in whole or in part, by the Company at any time and from time to time, provided that no such amendment shall operate to deprive any participant of any rights or benefits thereto having accrued to him under the Plan, except to such extent as may be necessary to enable the Plan to meet the requirements of the Internal Revenue Code, and provide further that the Plan, as amended, shall be for the exclusive benefit of employees and their beneficiaries.
Jomac contends that this reserved right mandates that the 1966 amendment providing for forfeiture in the event of competitive activity bars recovery for any rights or benefits which accrued prior or subsequent to the amendment.
It is urged that the rights to benefits in the profit-sharing plan did not become vested until and unless the employment was terminated, and since that did not occur until November 1967, plaintiff's rights under that plan should be controlled by the 1966 amendment. See McCostis v. Nashua Pressmen Union, 109 N.H. 226, 248 A.2d 85 (Sup. Ct. 1968).
There are no Pennsylvania or New Jersey cases with any definitive holdings on the effect of an amendment upon benefits which have accrued prior to its adoption. Therefore *17 this court is free to reach an independent conclusion on this issue, aided by the logic and wisdom of precedents in other jurisdictions.
In Kristt v. Whelan, 4 A.D.2d 195, 164 N.Y.S.2d 239 (App. Div. 1957) aff'd 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (Ct. App. 1958), the New York court sustained the position of the employer in barring recovery of any sum from a pension trust because of the forfeiture produced by competitive activity, despite the fact that the forfeiture provision resulted from an amendment during the employment. To the same effect, see McNevin v. Solvay Process Co., 32 App. Div. 610, 53 N.Y.S. 98 (App. Div. 1898), aff'd 167 N.Y. 530, 60 N.E. 1115 (Ct. App. 1901); McCostis v. Nashua Pressmen Union, supra; Connors v. Howard Stores Corp., 23 A.D.2d 686, 257 N.Y.S.2d 608 (App. Div. 1965). This determination is bottomed upon the right of amendment reserved in the underlying trust indenture and the concept that the inchoate right of the employee does not become vested until the termination of his employment. Hence, these courts conclude that the amendment is a valid and enforceable provision as applied to the total benefits which may have been due at the time of vesting, namely the termination of employment.
It is the opinion of this court that these holdings should be applied herein and that the reservation of an unlimited right to amend by the employer in a pension plan, followed by a forfeiture provision adopted by amendment after the commencement of employment, contractually supports the validity of the forfeiture as to all benefits prior to vesting.
This determination, however, is justified only where the reserved right of amendment is unfettered  a condition which either existed or was assumed by the courts in the cited cases. Cf. dissent in Kristt v. Whelan, supra, 164 N.Y.S.2d at 244.
As already noted, the power of amendment reserved by Jomac in its profit-sharing plan assured the employees *18 that "no such amendment shall operate to deprive any participant of any rights or benefits thereto having accrued to him under the Plan." The key to this clause is the meaning and intent of the word "accrued," which in common usage means "accumulated," as in the phrases "accrued interest" or "accrued liability." See Random House Dictionary (1966). In the latter phrases, the word "accrued" connotes the accumulation of the fund which is not necessarily due at the time.
It is also significant that the scrivener did not equate the term "accrued" with "vested" for a perusal of the entire plan reveals that when the company intended all the legal consequences attributable to a vested right it utilized the word "vested" and not "accrued." For example, Art. 9.1: "* * * shall forfeit all benefits theretofore vested in him"; Art. 6.3: "The interest of a participant * * * transferred from the pension trust shall be fully vested"; Art. 14.3: "No employee * * * shall have any right or claim to any benefit under the plan unless such benefit has become vested * * *" It can reasonably be concluded that the use of the term "accrued" in the amendment article was not intended as a synonym for the legal work of art, "vested," but rather in the ordinary sense of "accumulated."
Moreover, since the plan did not result from a consensual bilateral negotiation but represented a unilateral work product of the employer, any ambiguities in the language should be resolved against the company. Terminal Construction Corp. v. Bergen County, etc., District Authority, 18 N.J. 294, 302 (1955); Jennings v. Pinto, 5 N.J. 562, 569 (1950); Moses v. Edward H. Ellis, Inc., 4 N.J. 315, 322-323 (1950); Buscaglia v. Owens-Corning Fiberglas, 68 N.J. Super. 508, 519-520 (App. Div. 1961), aff'd 36 N.J. 532 (1962); Summer v. Fabregas, 52 N.J. Super. 399, 408 (App. Div. 1958). And the general disfavor of forfeiture, together with the policy of liberal construction in favor of the employee, further dictates a construction, which would avoid such a drastic result. Stopford v. Boonton Molding Co., Inc., *19 56 N.J. 169, 184-185 (1970); Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 35 (1967).
This analysis of the language of the amendment provision leads to the conclusion that the reservation of the right to amend was limited by the instrument itself, so as to foreclose the operation of any amendment which would deprive a participant from the enjoyment of such rights or benefits which had accrued to him prior to the adoption of the amendment. An interpretation to the contrary which would limit the effect of the caveat in the amendment provision to rights and benefits vested only after retirement would be meaningless, for the mere vesting by retirement would sufficiently protect a participant from inroads by amendment without the provision at issue. See dissent by Justice Rabin in Kristt, supra. To give the clause meaning and significance it must be interpreted to protect an employee from forfeiture of all accumulations which were to his credit as of the time of the amendment. Any accumulations subsequent to the adoption of the amendment, however, are not protected by any limitation in the right to amend. Hence, as to such subsequent credits the forfeiture provision is applicable.
In view of the foregoing, judgment will be entered declaring that plaintiff is entitled to all funds and cash surrender value of insurance policies to his credit in the profit-sharing plan (including those transferred from the pension plan) prior to March 25, 1966, which was the date of adoption of the forfeiture amendment. Plaintiff is not entitled to any accumulations subsequent to that date.
The parties should be able to agree upon the computation of the amount due as of the aforesaid date and whether the accumulations from the fund should be paid now or when plaintiff reaches 65 years of age. If they cannot so agree, the court will hear argument thereon in connection with settling the form of the order.