396 F.Supp. 907 (1975)
Ralph MILLER, Plaintiff,
v.
ASSOCIATED PENSION TRUSTS, INC., et al., Defendants.
No. 74-73 C (3).
United States District Court, E. D. Missouri, E. D.
June 24, 1975.
*908 Joel W. Case, Manchester, Mo., for plaintiff.
Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants.

MEMORANDUM
WANGELIN, District Judge.
This action was tried before the Court sitting without a jury. The Court took testimony in this case on June 16 and June 17, 1975. On June 17, 1975, the Court entered a judgment for the defendant against the plaintiff from the Bench.
The Court being fully apprised of the premises hereby makes the following findings of fact and conclusions of law.

Findings of Fact
1. The plaintiff, Ralph John Miller, is a citizen of Missouri, and all defendants are citizens of states other than Missouri. Defendant, Plastic Molders Supply Co., Inc., is a New Jersey corporation with its principal place of business in New Jersey. Defendant PMS Co. of Illinois, Inc. is an Illinois corporation with its principal place of business in Illinois. During the period involved in this lawsuit, the stock of both corporations was owned by William B. Bradbury and his family. At the present time, all the stock of the corporations is owned by a holding company, PMS Consolidated, Inc., and the Bradbury family owns the stock of the holding company. All of the affiliated PMS Companies will be collectively referred to herein as "PMS", except where otherwise necessary. The defendants, William Bradbury, *909 and Richard Anthony Bradbury, are trustees of the Plastic Molders Profit Sharing Trust and officers of PMS. Defendant, Associated Pension Trusts, Inc., (hereinafter "Associated") is an actuarial consultant to the Plan and defendant, John Lindgren, is President of Associated.
2. The plaintiff was employed by PMS in May of 1965. He served as a salesman in the St. Louis territory, which covered eastern Missouri, southern Illinois, southern Iowa, southern Indiana and western Kentucky. That sales area was later expanded to include western Missouri and the State of Kansas. In approximately 1969, plaintiff became district manager of the St. Louis district, an operating division of the Illinois corporation. As district manager, the plaintiff was responsible for all company operations in the district, including sales and production.
3. PMS is engaged in the business of manufacturing and selling plastic colorants. The plaintiff made calls upon and sold PMS products to a number of regular PMS customers in his district in the course of his employment with PMS.
4. PMS became dissatisfied with plaintiff's performance in 1971 and, at a meeting in Chicago, Illinois, Mr. Glen Skov, a Vice President of the Illinois corporation, and the plaintiff's superior, informed plaintiff that his employment was being terminated. Upon plaintiff's request for another chance, PMS reinstated him at that time.
5. PMS continued to be dissatisfied with plaintiff's performance even after his reinstatement. William Bradbury received information from employees of the St. Louis plant that they would quit if plaintiff was not fired in May of 1972. Bradbury went to St. Louis to investigate the situation and, on May 17, he wrote a letter to plaintiff terminating his employment with PMS effective immediately. The plaintiff, however, was paid through June 22, 1972, at which time he was given one month's termination pay.
6. PMS had established a "Plastic Molders Profit Sharing Trust" (hereinafter the Plan) for the benefit of its employees, in approximately 1959. The Plan was designed as a fringe benefit to encourage loyalty and productivity on the part of employees, and to provide them with generous retirement benefits. Funding was solely by the various PMS Companies, based upon the salary of the various participants and the profitability of the respective companies in each given fiscal year. There were no employee contributions to the Plan at any time. The governing indenture of the Plan concerning terminated employees provides in relevant part that:
"(c) If the Trustees find that any separated participant, during the first twelve (12) months after his separation, is engaged directly or indirectly in conduct prejudicial to the Company's interests, and if, after due notice such separated participant continues to be so engaged, the Trustees shall terminate payment of any further separation benefits to such separated participant . . . and any remaining balance shall be forfeited.
* * * * * *
"(e) In the event a participant is charged with forfeiture of all benefits, the Company shall be called upon to produce affirmative evidence to completely prove such charge beyond any doubt whatsoever. The participant so charged shall be afforded the right to be heard, and to produce witness to deny such charge. The Trustees' decision shall be final."
7. The evidence adduced at trial showed to the Court that the plastic coloring industry was and is highly competitive both in the solicitation of customers and in the recruiting of employees. Approximately 1960, the Trustees in Associated prepared an informational booklet describing the operation of the Plan. A copy of this booklet was given to each employee when he joined PMS. So that planned participants were to be notified of at least one type *910 of conduct which the Trustees would consider to be "prejudicial to the company's interests", the booklet included the following statement:
"There will be no benefits paid under this plan to any employee who goes to work for a competitor of this firm or opens his own business in competition with this firm. If any employee does this, the entire amount of money vested in his account will revert back to the remaining participants."
8. Plaintiff had been given a copy of the booklet when he began employment with PMS, and was aware of the consequences which would result from his taking employment with a competitor of PMS.
9. In early July, 1972, plaintiff accepted employment with Hammond Plastics Company as a sales representative in its Midwest Territory, which was virtually coextensive with the territory in which he had previously represented PMS. Hammond Plastics had not been previously represented in that territory, and plaintiff was employed to introduce Hammond products in that area. The exclusive sales agent in the Midwest Territory for Hammond was the plaintiff. Hammond Plastics sells plastic raw materials, including plastic colorants, and is a competitor of PMS. In July, 1972, and thereafter, plaintiff called on customers of PMS and solicited them to buy Hammond products, including colorants, which were used for the same purposes and accomplished essentially the same results as PMS products. Approximately 75% of the accounts called on by plaintiff during the first five months of his employment with Hammond, were customers of PMS. PMS lost business to Hammond in the territory in question, as a result of plaintiff's sales activities.
10. The evidence shows that the plaintiff had retained counsel to advise him as to his rights under the Plan in early July, 1972. Plaintiff inquired in July, 1972, of the Trustees, as to whether he could examine the governing Indenture. Both the plaintiff and his lawyer were advised by mail that they could examine the Indenture at the PMS Illinois office. Neither plaintiff nor his lawyer responded to that invitation.
11. In July or August, 1972, William Bradbury, Trustee of the Plan, became aware of rumors that the plaintiff had taken employment with a competitor of PMS. He ordered the Company, through Mr. Skov, to obtain proof as to the veracity of these rumors. Skov secured and supplied to the Trustees a business card of plaintiff, showing his employment with Hammond. Bradbury also learned that Miller was representing Hammond in almost precisely the same geographical area which he had covered for PMS.
12. Bradbury conferred with his co-trustee, Richard A. Bradbury, and the evidence indicates that they were convinced beyond any doubt that plaintiff was engaging in conduct prejudicial to the company's interest. They, therefore, determined in good faith and for proper cause that plaintiff was not entitled to any benefits under the Plan.
13. In January, 1973, PMS received an inquiry from plaintiff's attorney regarding plaintiff's benefits under the Plan. At that time PMS advised plaintiff's attorney that the plaintiff was not eligible for benefits under the Plan because of his competitive employment with Hammond. Neither PMS nor the Trustees received any response to that notification.
14. Plaintiff requested payment of his share under the Plan in July, 1973. At that time he was again notified that he was disqualified because he had been employed by Hammond, a competitor of PMS.
15. There was no further response from plaintiff until mid-November of 1973, when he sent a letter to Associated requesting a hearing. No hearing was held prior to this suit being filed on February 4, 1974.
16. The evidence produced at trial indicates to the Court that the action of the Trustees in terminating plaintiff's benefit under the Plan were taken in *911 good faith. Plaintiff has stipulated to the truth to the facts supporting the Trustees' decision.
17. According to the terms of the Indenture, the funds in plaintiff's account which were forfeited as a result of his employment with Hammond, are to be redistributed among the plan participants employed by the Illinois corporation. Neither of the Trustees is presently employed by the Illinois corporation, and neither of them will share in the reallocation of plaintiff's forfeited benefits.
18. There was no evidence produced to support plaintiff's charge that defendants conspired to deprive the plaintiff of any of his rights or interests or that the Trust was improperly administered.

Conclusions of Law
This Court has jurisdiction of the parties and the subject matter hereto pursuant to 28 U.S.C. § 1332.
The rights of the parties in this case are controlled by the substantive law of the State of New Jersey.
The key legal issue in the present case is whether or not the provision of the profit sharing plan which authorizes the Trustees to forfeit the interests of any participant, who within twelve (12) months of a separation from the company, engages in conduct prejudicial to the company's interests, is a valid and enforceable provision. The Court is of the opinion that such a provision is designed to protect the integrity of the plan, and is therefore valid since any competitive actions on the part of a former employee would in all probability have a detrimental effect upon the profit sharing aspect of the plan. Specht v. Eastwood-Nealley Corporation, 34 N.J.Super. 156, 111 A.2d 781 (1955); Bradford v. New York Times Co., 501 F.2d 51 (2nd Cir., 1974); and USAChem v. Goldstein, 512 F.2d 163 (2nd Cir., 1975). The effect of the plan's provision is not that of a restrictive covenant which would bar the employee from earning a living but rather provides him with a choice as to whether he wishes to compete with his former employer at the expense of losing his accrued benefits. Evo v. Jomac, Inc., 119 N.J.Super. 7, 289 A.2d 551 (1972).
Since the plaintiff did obtain competitive employment and take business away from PMS, he therefore beached a condition of the plan and was not qualified to receive benefits thereunder. Bradford v. New York Times Co., supra.
The evidentiary record established at trial indicates that the plaintiff was not eligible for benefits, and that such ineligibility was clearly proven to the Trustees.
While the Trust Indenture provides that the decision of the Trustees is final, such a decision may be reviewed by the Court for an abuse of discretion or bad faith. Golden v. Kentile Floors, Inc., 512 F.2d 838 (5th Cir., 1975). The evidentiary record shows that the Trustees decision was not made in bad faith nor was it an abuse of discretion. The plaintiff's failure to abide by the conditions stipulated by the Plan was admitted by stipulation, and it is clear that plaintiff had actual knowledge of the relevant provision of the Plan. Since the plaintiff had such actual knowledge and did not ask for a hearing until sixteen months after his termination, it is the opinion of this Court that the Trustees did not act arbitrarily or in bad faith by not conducting a hearing prior to the filing of this lawsuit. Van Pelt v. Berefco, Inc., 60 Ill.App.2d 415, 208 N.E.2d 858 (1965).
Since there was no evidence produced at trial indicating the existence of a conspiracy as alleged in Count II of plaintiff's complaint, and since plaintiff is not a participant or a beneficiary under the Plan, he has no legal standing to maintain such a cause of action as asserted in Count II.
For the above reasons, judgment will be entered for the defendant.