RUDITYS, Plaintiff-Respondent, v. WING, and others, Defendants-Appellants.

*No. 75–762. Submitted on briefs December 1, 1977.—*
*Decided January 3, 1978.*
(Also reported in 260 N.W.2d 794.)

668

For the appellants the cause was submitted on the brief of *Herbert L. Usow, S. C.,* of Milwaukee.

For the respondent the cause was submitted on the brief of *Henry A. Tessmer* of Milwaukee.

DAY, J.  This is an appeal from a judgment awarding the plaintiff-respondent, Robert Ruditys (hereinafter plaintiff) his full benefits under a profit sharing plan. The defendants-appellants, trustees of the W. B. Bottle Supply Company, Inc. Profit Sharing Trust (hereinafter defendants) contend that the trial court erred in finding that the plaintiff's interest in the profit sharing trust had completely vested. The defendants also claim that the trial court erred in excluding the testimony of an attorney who offered to interpret one of the sections of the profit sharing agreement.

The issues are as follows:

1.  Was the trial court's determination that the plaintiff was laid off for lack of work at the W. B. Bottle Supply Company against the great weight and clear preponderance of the evidence?

2.  Did the trial court misinterpret the phrase "dismissal for lack of work?"

3.  Did the trial court err in excluding the testimony of attorney Robert Meldman who offered to interpret the terms of the profit sharing agreement?

The plaintiff, Robert Ruditys, started working for W. B. Bottle Supply Company (hereinafter company) on June 24, 1966. During his employment, he received

increments in wages and was promoted from truck driver to warehouse foreman, a position which he held for three years. As warehouse foreman he supervised a truck driver and occasionally a warehouse worker or two. During his work with the company the plaintiff had no unexcused absences and he did satisfactory work the majority of the time.

Sometime in 1969 the plaintiff was told by Jerry Wing, a trustee of the profit sharing trust and an officer of the company, that plaintiff had "completed his time" and could participate in the profit sharing plan. One of the exhibits at the trial was the plaintiff's account book for the profit sharing trust. The book showed the company's contributions to the plaintiff's profit sharing account. The first company contribution to the plaintiff's credit was $835.00 and was dated December 31, 1969.

The plaintiff never received a full copy of the profit sharing plan, but he did receive a summary or the highlights of the plan sometime in 1970.

Prior to May 6, 1972, the plaintiff had never been given any disciplinary lay-offs nor had he been given any warnings that he would be terminated or suspended. One month before plaintiff's termination, he was told that he was doing an excellent job and that he would have a job for life. On May 6, 1972, the plaintiff's job was terminated.

The plaintiff's termination occurred because of an indirect threat made by him against Jerry Wing. The plaintiff made the statement to Lawrence Sandburg, a supervisor for the company. There are three markedly different versions of the statement in the record. Essentially, the plaintiff said that if Jerry Wing didn't stop treating him as he had been, something physical might happen to Wing. Prior to this incident, Jerry Wing had used insulting language when speaking to the plaintiff.

The plaintiff talked to Sandburg on the morning of May 6, 1972. Wilfred Wing, a trustee of the profit sharing trust and an officer of the company, terminated the plaintiff late in the afternoon of May 6th. The plaintiff testified that Wilfred Wing told him that there was no more work for him at the company and gave plaintiff testified that Wilfred Wing told him that there tiff also testified that he asked Wing if he was being fired and Wing replied, "No, I'm laying you off."

Wilfred Wing testified that late in the afternoon of May 6th he walked up to plaintiff and asked, "Why are you making me fire you?" Wing stated that he spoke with the plaintiff further and made it clear that plaintiff would not be rehired. Wing did not remember whether he gave reasons for the firing or if he discussed the Sandburg statement with the plaintiff.

Another company employee was moved in to replace the plaintiff on May 7, 1972 and eventually the company hired another person. The plaintiff was never recalled to work.

The plaintiff testified that after he was terminated he returned to the company and was told by Jerry Wing, "Bob, you have $4,200.00 coming from the profit sharing plan. I'll see to it that you get every penny." The plaintiff also claimed that Jerry Wing told him that he would receive the full amount coming to him because he had been laid off.

Jerry Wing admitted that he told plaintiff he would get everything coming to him, but denied telling plaintiff that $4,200.00 was due.

Plaintiff applied for unemployment benefits with the Wisconsin Department of Industry, Labor and Human Relations. D.I.L.H.R. sent the company its U.C.–23 form, Eligibility Report For Employer. The form inquires of the employer whether there is any reason to question the granting of benefits. The company did not dispute

plaintiff's unemployment claim and he was paid thirty-four weeks of compensation. In filling out the form, the company was asked to check one of a number of different boxes labeled, "laid off, lack of work," "quit," "misconduct" or "other." Wilfred Wing checked the "laid off, lack of work" box, but drew a line through "lack of work."

On December 6, 1972, Wilfred Wing wrote a letter of recommendation for the plaintiff stating that,

"Our operation laborwise is not very large which limits chances for further advancement. Therefore, after discussion with us, it was decided that he could possibly find better opportunities by a change of employment."

On December 31, 1972, plaintiff was paid $934.78 out of the profit sharing trust, thirty percent of the employer contributions to his account.

On February 19, 1976, judgment was entered in the Milwaukee County Court in favor of the plaintiff for an additional $3,405.68. The judgment also dismissed the defendant's counterclaim for the return of the $934.78.

### Trial Court Finding

The profit sharing trust plan contained two different provisions relating to distribution of funds upon an employee's separation from employment. The dispute in this case centers around which provision is the appropriate one for determination of the plaintiff's rights in the trust fund.

The plaintiff contends that his job was terminated because of a lack of work and sec. (7) (b) (2) of the plan controls. That section provides that,

"If an employee shall cease to be a full participant because of his dismissal from the Company's employ occasioned by lack of work, . . . then at the time such employee ceases to be a full participant as aforesaid, then he shall be entitled to a vested right: (B) 100% of his share in the trust fund resulting from contributions by the Company for his benefit. . . ."

This provision further provides that a temporary layoff in excess of three full months shall be deemed "dismissal occasioned by lack of work." The plaintiff argues that because his dismissal was occasioned by lack of work, he is entitled to his full share of company contributions in the trust fund.

The defendants' position is that section (7) (b) (1) controls. That section states that,

"(1) If an employee shall cease to be a participant because of his . . . dismissal from the company's employ, then he shall be entitled to a vested right in: (A) That portion of his share in the trust fund attributable to his own voluntary contributions . . .; and, (B) 10 % of share in the trust fund resulting from the contributions by the Company for his benefit for each full year he has been a participant in the profit sharing trust . . . provided, however, that if any full participant . . . is dismissed from the Company's employ within three years after he becomes a participant, he shall lose all rights or benefits . . . (resulting from the Company contributions.)"

The defendants contend that the plaintiff was "dismissed" November 6, 1972, and that he loses all benefits resulting from contributions by the company because his dismissal was within three years from the date on which he became a participant. Under defendant's interpretation, plaintiff would have been a participant for three years on December 31, 1972, seven weeks later.

However, the trial court found that the plaintiff was laid off for lack of work. The trial court made extensive findings of fact including the following:

1. ". . . on November 6, 1972 the plaintiff was informed by Wilfred Wing, Jr., that there was no more work for him at the bottling plant. He was given no further reason for his discharge . . .";

2. ". . . on November 6, the plaintiff was advised by Wilfred Wing, Jr., that he would not fight unemployment compensation,"

3. ". . . Wilfred Wing, Jr., did on November 10, 1972, submit a U.C.–23 Eligibility Report to the Wisconsin Department of Industry, Labor and Human Relations,

Unemployment Compensation Division wherein said Wilfred Wing represented that the plaintiff was laid off."

After referring to the letter of recommendation written by Wilfred Wing for the plaintiff, the trial court made a finding that,

". . . the representations made by the defendant that the plaintiff was laid off because their work was so limited and of such a nature that it limited his chance for further advancement, is a representation that he was laid off because of lack of work, or at least lack of work suitable for a man of plaintiff's qualifications."

Findings of fact of the trial court will not be disturbed unless they are against the great weight and clear preponderance of the evidence. *Stueck v. LeDuc,* 57 Wis.2d 735, 741, 205 N.W.2d 139 (1973). It is not sufficient for a reversal that contrary findings could have been made with evidence in their support. *Kirchen v. Gottschalk,* 26 Wis.2d 123, 126, 131 N.W.2d 885 (1965).

The defendants contend that the findings of fact in this case are against the great weight of the evidence. They claim the letter of recommendation and the representation on the unemployment form were done out of sympathy for plaintiff's family and do not prove that the plaintiff was laid off. This argument strongly implies that the representations on the form and letter were untruthful. The plaintiff testified that he was told on May 6, 1972 by Wilfred Wing that there was no more work for him at the company and that Jerry Wing told him later that he had $4,200.00 coming from the profit sharing plan. Wilfred Wing testified that he was sure the plaintiff knew he was being fired. Jerry Wing testified that someone was hired to replace the plaintiff and he denied telling the plaintiff that he had $4,200.00 coming. The testimony was contradictory and

the documentary evidence was open to differing interpretations, but the trial court's finding that the plaintiff was laid off for lack of work or lack of suitable work was not against the great weight or clear preponderance of the evidence.

The defendants also contend that trial court misinterpreted the meaning of the term dismissal for "lack of work." The defendants argue that the trial court used "dismissal for lack of work" to mean the same as "dismissal for lack of suitable work" or "dismissal for no cause."

Under the defendants interpretation of the term "dismissal for lack of work" an employee would lose his entire profit sharing account merely because the company did not have suitable work for that particular employee. Such a narrow construction contradicts this court's often stated rule that profit sharing plans are contracts between employer and employee that are to be liberally construed in favor of the employee. *Rosploch v. Alumatic Corp. of America*, 77 Wis.2d 76, 81, 251 N.W.2d 838 (1977) and cases cited therein. In *Rosploch* at 77 Wis.2d 81, 82 n. 2, this court cited the following language from *Evo v. Jomac, Inc.*, 119 N.J. Super, 7, 289 A.2d 551, 557 (1972).

"Since the plan did not result from a consensual bilateral negotiation, but represented a unilateral work product of the employer, any ambiguities in the language should be resolved against the company (citation omitted). And the general disfavor of forfeiture, together with the policy of liberal construction in favor of the employee, further dictates a construction which would avoid such a drastic result."

In this profit sharing plan we interpret "lack of work" to encompass "lack of suitable work for a particular

employee" and the trial court's factual finding concerning lack of work is dispositive of the main issue in this case. The plaintiff is entitled to all the company contributions in his profit sharing account.

The defendants also claim that the trial court erred in excluding the testimony of Robert Meldman, an attorney specializing in profit sharing and pension plans. The defendants' attorney, Mr. Usow asked Mr. Meldman questions about the requirements of eligibility under the plan and for an interpretation of sec. (7) (b) (2) of the plan. The plaintiff's attorney objected on the grounds that the answers would invade the province of the court. The defendant offered to prove that the witness would have testified that,

". . . under subparagraph (b) (2), that the provision would be interpreted to mean that the lack of a dismissal—or the company—the dismissal occasioned by lack of work would have to be for a period in excess of three months, to be deemed to be occasioned by lack of work. . ."

The offer of proof refers to paragraph (7) (b) (2) [1] wherein it states that a *temporary* lay off will be construed as a dismissal for lack of work after three months. It is clear that the plaintiff initiated this action more than three months after the termination of his employment. He was not called called back to work during those three months. Under these circumstances the interpretation of this section of the profit sharing plan was unambiguous and it was not error for the trial court to exclude the proffered testimony.

*By the Court.*—Judgment affirmed.

---

[1] "If an employee shall cease to be a full participant because of his dismissal from the Company's employ occasioned by lack of work (and a temporary lay off in excess of three (3) full months shall be deemed dismissal occasioned by lack of work), then at the time such employee ceases to be a full participant as aforesaid, . . ."