Belknap
No. 7846

### NORMAN BRULOTTE

v.

### CORMIER HOSIERY MILLS, INC.

June 19, 1978

*Wescott, Millham & Dyer*, of Laconia (*Rodney N. Dyer* orally), for the plaintiff.

*Normandin, Cheney & O'Neil*, of Laconia (*David O. Huot* orally), for the defendant.

JOHNSON, J. (By special assignment pursuant to RSA 490:3.) This is a petition for declaratory judgment filed by the plaintiff seeking an interpretation of the company's profit-sharing plan and of certain statements contained in the company's *Employee's Handbook.* The case was submitted upon an agreed statement of facts to a Master (*Mayland H. Morse, Jr.*, Esq.) who recommended a verdict for the plaintiff. The master's report was approved by the Court, and defendant's exceptions were transferred by *Loughlin*, J.

The plaintiff, Norman Brulotte, became a full-time employee of the company in November 1967 and was terminated as of January 1, 1974. At the time of his termination he had had more than five years' continuous service with the company. The plaintiff's entitlement under the company profit-sharing plan is described in the following provision of the company's *Employee's Handbook*:

WHAT IF I LEAVE THE COMPANY?

If you leave before retirement, your rights will depend on the length of time you were a participant in the plan. They also depend upon the reason why you leave the company. If you were displaced by automation or job elimination, your rights in your account are determined from this table:

| If you were a profit sharing participant for this many years | You are entitled to this percentage of your profit sharing account balance |
| --- | --- |
| fewer than 1 | none |
| 1 but fewer than 2 | 5% |
| 2 but fewer than 3 | 10% |
| 3 but fewer than 4 | 40% |
| 4 but fewer than 5 | 70% |
| 5 or more | 100% |

If you leave or are discharged for any reason other than automation or job elimination, you are entitled to 5% of your account balance for each year of participation. This amount will be paid to you as of the January 1 after you leave.

Mr. Brulotte was employed in the quality control department of the company with one other employee. The volume of work for the plant, as a whole, had decreased and the plaintiff's employment was terminated due to lack of work. The other employee continued to carry on the functions of the department. Because the volume of work for the plant did not increase after the plaintiff's termination, he was not rehired, nor was anyone hired to replace him. If the volume of work had increased, the company would have had to hire someone to fill the same position once held by the plaintiff.

The parties have agreed on all issues concerning plaintiff's entitlement but one: whether, based upon these facts, plaintiff's termination was for "any reason other than . . . job elimination." Plaintiff contends that he was terminated because his job was eliminated, whereas the company contends the job was not eliminated but was terminated because of lack of work for that particular job.

The answer to the question before us depends upon the interpretation of the phrase "job elimination" as set forth in the company's *Employee's Handbook.* To reach an accurate interpretation we must determine what the words meant to those who used them. *See Brampton Woolen Co. v. Local Union 112*, 95 N.H. 255, 257, 61 A.2d 796, 797 (1948).

The master concluded that a person in the position of the employee could have reasonably understood the phrase "job elimination" to mean a discharge from employment because of a slow business period or because of other business considerations, which leave vacant or unfilled the position which he held. There was sufficient evidence in the case to support such a conclusion.

Courts have also recognized that a profit-sharing plan should be construed liberally in favor of the employee, *Brinzo v. Phoenix Steel Corp.*, 304 A.2d 66, 67 (Del. Ch. 1973); *Frietzche v. First Western Bank and Trust Co.*, 168 Cal. App. 2d 705, 336 P.2d 589 (D. Ct. App. 1959); *Connor v. Phoenix Steel Corp.*, 249 A.2d 866, 869 (Del. 1969), with any ambiguities in the language resolved against the company, *Rosploch v. Alumatic Corp. of America*, 77 Wis. 2d 76, 81 n.2, 251 N.W.2d 838, 841 n.2 (1977); *Evo v. Jomac, Inc.*, 119 N.J. Super. 7, 18, 289 A.2d 551, 557 (1972); *Terminal Constr. Corp. v. Bergen County*, 18 N.J. 294, 302, 113 A.2d 787, 791 (1955), and that the language should be construed in such a way as to avoid forfeiture. *Stopford v. Boonton Molding Co.*, 56 N.J. 169, 184, 265 A.2d 657, 665 (1970); *Evo v. Jomac, Inc.*, 119 N.J. Super. at 18, 289 A.2d at 557; *Russell v. Princeton Laboratories, Inc.*, 50 N.J. 30, 38, 231 A.2d

800, 805 (1967). The master's conclusion is consistent with these principles.

We hold that there is no significant difference between a job being "eliminated" and a job being "terminated" as a result of lack of work for that particular job, under the terms of the company's profit-sharing plan, and that therefore the plaintiff is entitled to 100% of his benefits.

*Exceptions overruled.*

LAMPRON, J., did not sit; BEAN, J., sat by special assignment under RSA 490:3; all concurred.