665 F.2d 843
 2 Employee Benefits Ca 2202
 John M. HAUCK, Ralph May and Gerald Mitchell, as all of the
members of the Administrative Committee on behalf
of Tubular Steel, Inc. Profit Sharing
Plan, Appellants,
v.
E. W. ESCHBACHER and R. E. Gray, Appellees.
 No. 81-1075.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 14, 1981.
Decided Dec. 10, 1981.
 
 Larry B. Luber, Mark H. Goran (argued), St. Louis, Mo., for appellants; Greensfelder, Hemker, Wiese, Gale & Chappelow, St. Louis, Mo., of counsel.
 Theodore D. Ponfil, Gary A. Growe (argued), Blumenfeld, Marx & Tureen, P. C., St. Louis, Mo., for appellees.
 Before STEPHENSON, Circuit Judge, GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Plaintiffs-appellants in this case seek a declaratory judgment concerning accrued benefits in a profit-sharing plan. The plaintiffs maintain that the two defendants have violated the "non-competition" clause of the plan and thus have forfeited their benefits. The district court[1] determined that the retroactive application of the no-compete clause to the two defendants would violate the profit-sharing plan. Thus, the district court concluded that forfeiture was not proper.
 
 
 2
 The district court also held that the plaintiffs' action amounted to an anticipatory breach of the profit-sharing plan and, therefore, the defendants were entitled to an immediate lump-sum payment of their accrued benefits, if they decided to elect this remedy.
 
 
 3
 We affirm the district court's conclusion that forfeiture was not appropriate but disagree on the question of anticipatory breach. Therefore, the defendants should receive the benefits but in the manner envisaged in the profit-sharing plan.
 
 I. BACKGROUND
 
 4
 The defendants in this case are E. W. Eschbacher and R. E. Gray. Both Eschbacher and Gray became employees of Tubular Steel, Inc. on October 1, 1967. Eschbacher was employed as a vice-president and product manager. Gray worked as an operations manager and later as a salesman. Tubular Steel is a Missouri corporation which processes and distributes steel tubing and piping throughout the United States.
 
 
 5
 When Eschbacher and Gray started at Tubular Steel, the company had earlier adopted a tax-qualified plan of deferred compensation known as the Tubular Steel, Inc. Profit Sharing Plan and Trust. This original or initial plan was adopted on December 28, 1965, and contained a "no-compete forfeiture clause." In relevant part, section 12.7 states that an employee's benefits shall be forfeited if the employee works for a competitor within twelve months after leaving Tubular Steel.[2]
 
 
 6
 The Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 et seq., required substantial changes in Tubular Steel's profit-sharing plans. The changes in the vesting rules were required to be effective for plan years beginning after December 31, 1975. See 29 U.S.C. § 1061(b)(2).[3]
 
 
 7
 In order to comply with ERISA, Tubular Steel began to alter its profit-sharing plan. On September 27, 1976, Tubular Steel adopted an amended and restated profit-sharing plan. This restated plan did not contain a no-compete forfeiture clause such as section 12.7 of the original plan. The restated plan was again amended on January 28, 1977. Nothing was added in this amendment that is pertinent to this case. The restated plan was again amended on August 2, 1977. The restated plan and the two amendments were made retroactive to January 1, 1976.
 
 
 8
 The August 2, 1977, amendment added section 14.14, a no-compete forfeiture clause.[4] In contrast to section 12.7 of the original plan, the new no-compete forfeiture clause expanded the restricted period from one to three years. However, it only applied to persons who had worked less than ten years with the employer. This ten-year limitation was necessary in order for the new clause to be consistent with ERISA's minimum vesting standards. See Hepple v. Roberts & Dybdahl, Inc., 622 F.2d 962 (8th Cir. 1980). The new no-compete clause was adopted August 2, 1977, but made retroactive to January 1, 1976.
 
 
 9
 While Tubular Steel was in the process of bringing its pension plan into compliance with ERISA, the facts occurred which led to this lawsuit. On March 15, 1976, defendants Eschbacher and Gray left the employ of Tubular Steel and began working for Aladdin Steel, Inc., an Illinois corporation. Eschbacher became president of Aladdin and Gray, vice-president. It is conceded that Aladdin is in direct competition with Tubular Steel.
 
 
 10
 On June 16, 1978, twenty-seven months after the defendants left Tubular Steel, the administrative committee of Tubular Steel restated plan sent notices to Eschbacher and Gray stating that they were considered to be in violation of section 14.14. The committee provided an opportunity for the defendants to rebut this conclusion and stated that if the committee nevertheless decided that the defendants were in violation of section 14.14, then, unless the competitive activity ceased, they would affect a forfeiture of defendants' benefits.[5]
 
 
 11
 The committee then filed suit on October 12, 1978, seeking a declaratory judgment stating that forfeiture of the defendants' accrued benefits was lawful. On cross-motions for summary judgment the district court adopted the report and recommendation of Magistrate David Noce. The magistrate concluded, and the district court agreed, that retroactive application of section 14.14 to the defendants would violate section 10.1(c) of the restated plan. Section 10.1(c) provides:
 
 
 12
 10.1 The Employer, by resolution of its Board of Directors, reserves the right to make from time to time any amendment or amendments to this Plan, provided however:
 
 
 13
 (c) Any such amendment shall not reduce a Participant's accrued benefits to less than the benefits to which he would have been entitled if he had resigned from the employ of the Employer on the day prior to the effective date of such amendment.
 
 
 14
 The magistrate concluded that "(c)learly, the retroactive application of § 14.14 to defendants resulted in a reduction of their accrued benefits in violation of § 10.1(c) of the (r)estated (p)lan."
 
 
 15
 The magistrate also decided that, although the restated plan requires distribution only after the defendants have reached age sixty-five in most cases, the plaintiffs' actions amounted to a "total anticipatory breach of the agreement to pay defendants' benefits pursuant to the (r)estatement (p)lan, without the improper retroactive application of § 14.14."[6]
 
 II. DISCUSSION
 
 16
 A. Is Forfeiture Proper?
 
 
 17
 On appeal, the administrative committee of the Tubular Steel plan argues that section 14.14 concerns whether an employee is entitled to accrued benefits and not to the computation of the amount. They assert that application of section 14.14 to the defendants here does not reduce the amount of accrued benefits but merely concerns entitlement. Thus, they argue that application of section 14.14 of the restated plan to the defendants does not violate section 10.1(c) because it would not reduce their accrued benefits but merely eliminate their entitlement to those benefits. Further, the appellants note that Eschbacher and Gray did not render sufficient service to be entitled to share in contributions for any year after December 31, 1975. Thus, all of the contributions to the defendants' accrued benefits were made at a time when the contract embodied in the profit-sharing plan contained an enforceable forfeiture condition, section 12.7. The retroactive application, in the appellants' view, did not add a condition to Eschbacher's and Gray's entitlement to benefits under the plan.
 
 
 18
 We agree with the defendants that the dichotomy between an elimination of entitlement and a reduction in benefits is a distinction without a difference. The elimination of an entitlement is nothing more than a one hundred percent reduction in accrued benefits.
 
 
 19
 We also disagree with the appellants concerning the impact of section 12.7 of the original plan in this case. The restated or post-ERISA plan in section 10.1(c) allows amendments to the plan only where an employee's accrued benefits are not reduced to less than he would have been entitled to "if he had resigned from the employ of the (e)mployer on the day prior to the effective date of such amendment." In this case, the day prior to the effective date of the amendment in question was December 31, 1975. If Eschbacher and Gray had resigned on that day, their accrued benefits could have been forfeited under the terms of section 12.7 with its one-year prohibition against competitive conduct. But, as noted above, the two defendants were not given a notice to cure their violation until some twenty-seven months after they terminated their relationship with Tubular Steel. Although this is within the three-year restriction contained in post-ERISA section 14.14, it is beyond the time that a former employee was similarly restricted under section 12.7.
 
 
 20
 The failure of the appellants to provide notice to the defendants within one year of their departure is obviously critical. Because of the committee's untimely notice, the accrued benefits of the defendants are reduced by the application of section 14.14 from what they would have received if they had resigned before the effective date of the amendment. Nor can it be said that section 12.7 did not require notice within the one-year period. Section 12.7 expressly states that a former employee who is allegedly violating the no-compete rule shall be given written notice of a right to cure and it is only when this notice goes unheeded that benefits may be forfeited. See n.2, supra.
 
 
 21
 It is this difference in the timing of the notice required under the two provisions and the fact that the defendants did not receive timely notice under the requirement of section 12.7 that leads to our conclusion. The application of section 14.14 creates a reduction in accrued benefits and thus is a violation of section 10.1(c).[7]
 
 
 22
 In reaching this conclusion, the magistrate relied upon Rochester Corp. v. Rochester, 450 F.2d 118 (4th Cir. 1971); Evo v. Jomac, Inc., 119 N.J.Super. 7, 289 A.2d 551, 555-57 (Law Div.1972); Rosploch v. Alumatic Corp., 77 Wis.2d 76, 251 N.W.2d 838, 841-44 (1977). These cases are helpful in that they express the harshness with which the retroactive amendment can operate but these opinions are not dispositive of the issue raised in this appeal. We emphasize that our analysis is an interpretation of the contracts involved, i. e., we do not decide the issue of whether this amendment violates section 204(g) of ERISA, 29 U.S.C. § 1054(g), as suggested by the defendants.
 
 B. Remedy
 
 23
 The second main conclusion reached by the magistrate, and adopted by the district court, was that the plaintiffs had anticipatorily breached the contract to the extent that defendants could receive immediate distribution of their accrued benefits in a single payment if they so chose. We disagree with this conclusion.
 
 
 24
 Normally the benefits under the Tubular Steel profit-sharing plan are not distributed until the employee reaches sixty-five years of age. At that time the employee may elect to receive a lump-sum payment or select from several other forms of distribution. At this point the committee maintains that it has not formally declared a forfeiture while the defendants assert that this has already been done. The defendants rely upon two letters which are not a part of the record and, according to the plaintiffs' reply brief, are merely a technical statement of the plaintiffs' position in this matter which was requested by the defendants' counsel. The plaintiffs also make the unequivocal representation that "the (c)ommittee has not reallocated the benefits subject to (s)ection 14.14, (that the committee) does not intend to do so without the authority of the court, and has continued to furnish Eschbacher and Gray with statements of the accrued benefits in their individual accounts." Based on these representations, it is clear that no breach has occurred. In this declaratory judgment action the plaintiffs have merely sought to have their responsibilities to Eschbacher and Gray clarified. There is no indication that the committee will not abide by the decision of this court and provide the benefits in the manner envisaged by the profit-sharing plan.[8] Because there is no anticipatory breach, the remedy of a lump-sum payment is not required.
 
 
 25
 Further, ERISA provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B). The terms of the plan in the case at bar are that the administrator has the discretionary power to commence the payment of benefits prior to the time Eschbacher and Gray reach sixty-five years of age but it is not required to do so until that time. See n.8, supra. Our discussion above demonstrates that the defendants' right to receive the benefits at age sixty-five is intact. It is also clear that under the terms of the plan no immediate lump-sum payment is mandated and thus benefits are not now due.[9]
 
 
 26
 In summary, we affirm the district court's holding that the application of section 14.14 of the post-ERISA plan in order to forfeit benefits accrued to the two defendants would violate section 10.1(c) of the restated plan. Further, we reverse the district court in regard to its conclusion that a lump-sum payment would be required if the defendants so desired.
 
 
 27
 Affirmed in part; reversed in part.
 
 
 
 [1]
 The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri, presiding
 
 
 [2]
 Section 12.7 of the original plan states:
 A participant whose continuous employment with the Company is terminated prior to his normal retirement date and either: (i) who is employed by the Company as a salesman, or (ii) whose compensation from the Company, as defined in section 2.6, for the fiscal year in which such termination occurs or either of the two fiscal years next prior thereto, is $6,000.00 or more, irrespective of the nature of such participant's duties with the Company, shall be subject to the condition that he shall not, for a period of twelve (12) months from and after such termination or for the period from and after such termination and prior to his normal retirement date, whichever is the shorter, directly or indirectly, engage in or be interested in, whether as employee, agent, owner, independent contractor, stockholder or otherwise, any business or activity within the United States which is determined by the Board of Directors of the Company to be competitive with any business carried on by the Company at the time of the termination of such former participant's employment. At any time prior to the expiration of whichever of the aforesaid periods is applicable, the Board of Directors of the Company, in order to ascertain whether or not such former participant has violated the aforesaid condition, may require of such former participant written answer to such written interrogatories as the Board of Directors may in its discretion determine to propound to such former participant relative to such former participant's observance or non-observance of the aforesaid condition, any such interrogatories to be sent to such former participant by certified mail, return receipt requested, addressed to the last known address of such former participant. If such former participant shall fail to deliver to the Board of Directors, or its designated agent for such purpose, complete and truthful answers to each and every such interrogatory within the time limited therefor, as set forth in connection with such interrogatories, or, if the answers to such interrogatories shall disclose that such former participant has violated the aforesaid condition, or, if independently of any such interrogatories, the Board of Directors shall determine that such former participant has violated the aforesaid condition, the Board of Directors shall require such former participant to cure such violation on or before the date set forth in written notice given by the Board of Directors to such former participant by certified mail, return receipt requested, addressed to the last known address of such former participant, and, if such former participant shall fail to cure the violation set forth in such notice on or before the date therefor set forth in such notice, the amount to which such former participant and his beneficiaries would thereafter otherwise be entitled to receive under the plan shall be forfeited and such former participant and his beneficiaries shall have no further interest in the plan.
 
 
 [3]
 For example, initially it was thought that the no-compete forfeiture clauses, also known as "bad boy" provisions, were not permissible under ERISA. See Keller v. Graphic Systems, 422 F.Supp. 1005, 1008-09 (N.D.Ohio 1976); Ellis v. Lionikis, 377 A.2d 1208 (N.J.Super.Ct.Ch.Div.1977); Lee, ERISA's "Bad Boy" Forfeiture for Cause in Retirement Plans, 9 Loy.Chi.L.J. 137 (1977). Cf. Hepple v. Roberts & Dybdahl, Inc., 622 F.2d 962 (8th Cir. 1980) (upholding a "bad boy" provision as not violative of ERISA)
 
 
 [4]
 Section 14.14 of the restated plan provides:
 Notwithstanding any provision in this Plan to the contrary, a Participant whose employment with the Employer terminates prior to his Normal Retirement Date, and who completed fewer than ten (10) Years of Service prior to said termination, shall be subject to the condition that he shall not, for a period of thirty-six (36) months from and after such termination or for the period from and after such termination and prior to his Normal Retirement Date, whichever is the shorter, directly or indirectly, engage in or be interested in, whether as employee, agent, owner, independent contractor, stockholder or otherwise, any business or activity within the United States which is determined by the Board of Directors of the Employer at any time within said period to be competitive with any business carried on by the Employer. At any time prior to the expiration of whichever of the aforesaid periods is applicable, the Board of Directors of the Employer, in order to ascertain whether or not such Former Participant violated the aforesaid condition, may require of such Former Participant written answer to such written interrogatories as the Board of Directors may in its discretion determine to propound to such Former Participant relative to such Former Participant's observance or non-observance of the aforesaid condition, any such interrogatories to be sent to such Former Participant by certified mail, return receipt requested, addressed to the last known address of such Former Participant. If such Former Participant shall fail to deliver to the Board of Directors, or its designated agent for such purpose, complete and truthful answers to each and every such interrogatory within a time specified therefor, as set forth in connection with such interrogatories, or, if the answers to such interrogatories shall disclose that such Former Participant has violated the aforesaid condition, or, if independently of any such interrogatories, the Board of Directors shall determine that such Former Participant has violated the aforesaid condition, the Board of Directors shall require such Former Participant to cure such violation on or before a date set forth in written notice given by the Board of Directors to such Former Participant by certified mail, return receipt requested, addressed to the last known address of such Former Participant, and, if such Former Participant shall fail to cure the violation set forth in such notice on or before the date therefor set forth in such notice, the amount to which such Former Participant and his Beneficiaries would thereafter otherwise be entitled to receive under the Plan shall be forfeited and such Former Participant and his Beneficiaries shall have no further interest in the Plan. If the amounts payable to such Former Participant and his Beneficiaries are by virtue of an annuity contract and if the rules of the insurer permit, the Trustee, upon written direction from such Board of Directors, shall cause the insurer to pay to the Trustee the commuted value of such contract, and the Administrator shall allocate all sums so received by it in accordance with the provisions for allocation contained in Section 6.2(c). If the amounts payable to such Former Participant and his Beneficiaries are held by the Trustee in a Retirement Fund, the Administrator, upon written direction from such Board of Directors, shall allocate the amount in such Retirement Fund in accordance with the provisions for allocation contained in Section 6.2(c). The Board of Directors of the Employer, in accordance with uniform principles consistently applied, may enforce the aforesaid condition at any time within the period of the aforesaid condition or waive the breach of the aforesaid condition, as it in its sole discretion may determine.
 
 
 [5]
 The magistrate noted that Eschbacher's account balance was $38,491.52 and Gray's was $16,542.62
 
 
 [6]
 The magistrate relied upon Hoefel v. Atlas Tack Corp., 581 F.2d 1, 7 (1st Cir. 1978), cert. denied, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); Minnesota Amusement Co. v. Larkin, 299 F.2d 142, 153 (8th Cir. 1962); Burch v. Union Life Ins. Co., 319 S.W.2d 908, 912-13 (Mo.App.1959); Stopford v. Boonton Molding Co., 56 N.J. 169, 265 A.2d 657 (N.J.Sup.Ct.1970); 4 A. Corbin, Corbin on Contracts, § 954 at 831-32 (1951)
 
 
 [7]
 We also note that Miller v. Associated Pension Trusts, Inc., 541 F.2d 726 (8th Cir. 1976), relied upon by appellants, is readily distinguishable. In Miller, this court held that a pension trust's failure to provide a former employee with the procedural safeguards mandated by the profit-sharing plan prior to declaring a forfeiture of benefits did not prejudice the former employee nor did it demonstrate that the administrator of the pension fund acted in bad faith. Id. at 729. In the case at bar, a different issue is presented. Here the question is whether the retroactive application of section 14.14 would create a change in conditions such that section 10.1(c) of the restated plan is violated. The failure of the plaintiffs here to give notice demonstrates the clear difference between section 14.14 and section 12.7 is such that a violation of section 10.1(c) exists. Obviously, the lack of notice was prejudicial here because it meant that the defendants were subject to a forfeiture under section 14.14 but would not have been under section 12.7
 
 
 [8]
 Section 7.8(b) of the post-ERISA plan provides:
 If a Participant's entitlement to benefits arises under ... (Section) 7.4 (termination of Participant's employment before age 65 for reason other than disability or death), the payment of the Participant's benefits must commence within a reasonable time which shall be not more than 60 days after the later of the close of the Plan Year in which occurs:
 (i) The date on which the Participant or Former Participant attains age 65, or
 (ii) The date on which the Participant's employment terminates after he attains age 65. (emphasis supplied)
 Section 7.7 of the post-ERISA plan provides:
 Upon a Participant's entitlement to benefits under * * * Section * * * 7.4, he shall file with the Administrator a written request specifying:
 (a) When he wishes to receive payment of benefits,
 (b) Which of the methods provided below for payment of his benefits he would prefer.
 The Administrator shall determine when payment of a Participant's benefits is to commence and the method by which his benefits will be paid and shall direct the Trustee accordingly. The Administrator shall exercise his sole and absolute discretion in making any determinations under this section, subject only to the special rules of Sections 7.8 and 7.9, and shall not in the exercise of such discretion be bound in any manner whatsoever by a Participant's request under this section.
 
 
 [9]
 ERISA states that payment of benefits shall begin not later than, in this case, the date on which the participant attains age 65. See 29 U.S.C. § 1056(a). A terminated participant may not compel payment of his benefits prior to the latest date set forth in the statute unless the terms of the plan mandate earlier distribution. See Tanuggi v. Grolier, Inc., 471 F.Supp. 1209, 1216-17 (S.D.N.Y.1979); Riley v. Meba Pension Trust, 452 F.Supp. 117, 120-21 (S.D.N.Y.), aff'd, 586 F.2d 968, 972 (2d Cir. 1978). In the case at bar, the plan does not mandate earlier distribution