127 N.J. Super. 499 (1973)
318 A.2d 20
D.H.M. INDUSTRIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
CENTRAL PORT WAREHOUSES, INC., A NEW JERSEY CORPORATION, AND CORBIN-BAY REALTY CORP., A NEW JERSEY CORPORATION, DEFENDANTS-THIRD-PARTY PLAINTIFFS-RESPONDENTS,
v.
D.H. OVERMYER CO., INC., A NEW JERSEY CORPORATION, AND D.H. OVERMYER CO., INC., AN OHIO CORPORATION, THIRD-PARTY DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 5, 1973.
Decided May 4, 1973.
*501 Before Judges COLLESTER, LEONARD and HALPERN.
Mr. Burton T. Cohen argued the cause for appellant D.H. Overmyer Co., Inc. (Mr. Walter Henry Jones, attorney).
Mr. David J. Goldberg argued the cause for respondent D.H.M. Industries, Inc. (Messrs. Warren, Goldberg & Berman, attorneys).
Mr. Sanford Silverman filed a statement in lieu of brief on behalf of respondent Corbin-Bay Realty Corp.
PER CURIAM.
The instant case is one in a series of suits stemming from a lease entered into between plaintiff and Central Port Warehouses, Inc. (Central) on February 4, 1969. In brief, the relevant terms of the lease required plaintiff to erect a 500,000 square foot warehouse in Elizabeth, New Jersey, to be leased to Central for a 20 year term commencing on the date plaintiff notified Central that a Certificate of Occupancy had been issued. The rental for the term was $10,500,000, payable in equal monthly installments of $43,750. Central posted as security the sum of $126,525. Subsequent to the making of the lease, but prior to occupancy, Central with plaintiff's consent assigned its rights under the lease to Corbin-Bay Realty Corp. (Corbin-Bay). Corbin-Bay subleased to appellant D.H. Overmyer, Inc. (Overmyer), who *502 in turn agreed to indemnify and hold Central and Corbin-Bay harmless from liability to plaintiff under the lease.
Without detailing the issues tried in the various law suits between the parties, it will suffice to say that Overmyer was held to have wrongfully refused to take possession when the building was completed. Ultimately, the instant suit was brought by plaintiff to recover for the wrongful anticipatory breach.
Judgment was entered for plaintiff against Central and Corbin-Bay for $126,525, the amount of security deposit, which the court found to be liquidated damages under the terms of the lease. It also entered judgment for Central and Corbin-Bay against Overmyer, on its indemnity agreement, for $131,250. No appeal is taken from the latter judgment, but Overmyer appeals from the judgment for plaintiff against Central and Corbin-Bay for $126,525. We will not pass upon Overmyer's standing to appeal the judgment in question, because we prefer to dispose of the appeal on the merits since the judgments are interrelated.
The narrow issue on appeal is whether the court erred in holding that the sum of $126,525 had been agreed upon as liquidated damages. Overmyer contends it was a penalty, and that plaintiff's damages "are greatly less than the security deposit retained."
The lease provisions which relate to a breach by the tenant and its effect upon the security deposits are:
Anything to the contrary contained herein notwithstanding, it is specifically understood and agreed by and between the Lessor and Lessee, that, in the event this Lease shall terminate pursuant to the provisions of Paragraph 23 hereof, or in the event Lessor shall elect to re-enter the premises pursuant to the provisions of said paragraph, then and in either of such events, upon five (5) days' notice in writing by certified mail, return receipt requested, addressed to Lessee, Lessor shall retain all of the unapplied hereinabove referred to security together with accrued interest [Emphasis added]. (Par. 4(c)).
Terminate this Lease on three days' notice to Lessee, in which event Lessee agrees to immediately surrender possession of said premises and to pay Lessor all damages Lessee may incur by reason of *503 Lessee's default, including the cost of recovering possession of said premises and including the worth at the time of such termination of the excess, if any, of the amount of rent and charges equivalent to the rent reserved in this Lease for the remainder of the stated term over the then reasonable rental value of said premises for the remainder of said term [Emphasis added]. (Par. 23(c)).
We are mindful of the fact that this is a large commercial lease entered into by knowledgeable businessmen after arms length negotiations from positions of bargaining equality. In ascertaining whether the security deposit provision in the lease was intended to serve as liquidated damages in the event of a breach by the tenant, we must determine (1) the intent of the parties; (2) if a breach occurred would the extent of damage be difficult to evaluate; and (3) whether the amount posted as security represented a good faith effort to estimate in advance the foreseeable and probable loss which might ensue from a breach. Barr and Sons, Inc. v. Cherry Hill Center, Inc., 90 N.J. Super. 358 (App. Div. 1966); Westmount Country Club v. Kameny, 82 N.J. Super. 200 (App. Div. 1964); In re Plywood Company of Pennsylvania, 425 F.2d 151 (3 Cir.1970); 49 Am. Jur.2d, Landlord and Tenant, § 1055 (1970); McCormick on Damages, § 146-153 (1935). The modern tendency of the courts has been to look with favor upon provisions in agreements which fix specified amounts as damages in the event of a breach, preferring to consider them as liquidated damage clauses rather than penalties. 22 Am. Jur.2d, Damages, § 214, p. 301 (1965); Williston, Contracts, 3d ed. § 214. As indicated in Priebe & Sons v. United States, 332 U.S. 407, 68 S.Ct. 123, 92 L.Ed. 32, 109 Ct. Cl. 870 (1947)
Today the law does not look with disfavor upon `liquidated damages' provisions in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced. (citations omitted) They serve a particularly useful function when damages are uncertain in nature or amount or are unmeasurable, as is the case in many government contracts. (citations omitted) And the fact that the damages suffered are shown to *504 be less than the damages contracted for is not fatal. These provisions are to be judged as of the time of making the contract. (at pp. 411-412, 68 S.Ct. at 126)
Tested by these standards, the facts existing when the original contract was made clearly make Par. 4(c) of the lease an honest attempt to fix just compensation for anticipated losses resulting from a breach by the tenant because (1) there was involved a 20 year lease of a specially constructed building with a gross rental of $10,500,000; (2) the security posted of $126,525 represented about 1% of the gross rental, or approximately two months rental; (3) if a breach occurred, the ability to obtain another suitable tenant for this building within a short time at a comparable rental and term was questionable; (4) the expense necessary to put a new tenant in possession by way of repairs, legal fees, etc., would be difficult to estimate; and (5) as it turned out, the actual damages suffered by plaintiff were not disproportionate with the security posted.
Nor does the fact that Par. 23(c) of the contract gave plaintiff the additional right to seek general damages in the event of a breach by the tenant turn Par. 4(c) into a penalty clause. In the first place, the plaintiff at the time of trial elected to proceed under Par. 4(c) and the case was tried by the parties on that basis. Secondly, the two clauses express the intent and agreement between the parties in the event of a breach  namely, they recognized that some damages in the event of a breach could not be readily estimated, while other damages could. This was the situation in J.E. Hathaway & Co. v. United States, 249 U.S. 460, 39 S.Ct. 346, 63 L.Ed. 707 (1919) wherein Justice Brandeis stated:
* * * There is no reason why parties competent to contract may not agree that certain elements of damage difficult to estimate shall be covered by a provision for liquidated damages, and that other elements shall be ascertained in the usual manner. Provisions of a contract clearly expressed do not cease to be binding upon the parties, because they relate to the measure of damages.
*505 Considering the nature of this lease and the circumstances surrounding its making, and construing the lease as an integrated whole, Par. 4(c) was properly construed by the trial judge to be an enforceable liquidated damage clause.
Affirmed.
COLLESTER, P.J.A.D. (dissenting).
I cannot agree that Paragraph 4(c) of the lease, which provides that the lessor shall retain the security deposit upon termination of the lease due to the lessee's default, is a liquidated damage clause.
Liquidated damages are a sum which a party to a contract agrees to pay or a deposit which he agrees to forfeit, if he breaks some promise, and which, having been arrived at by a good-faith effort to estimate in advance the actual damage which would probably ensue from the breach, are legally recoverable or retainable as agreed damages if the breach occurs. McCormick, Damages, § 146, p. 599 (1935); Westmount Country Club v. Kameny, 82 N.J. Super. 200, 205 (App. Div. 1964).
In the determination of whether a clause in a contract is one for liquidated damages or an unenforceable penalty, the construction to be placed on the clause is to be decided by considering all the terms of the contract. And if it is doubtful on the whole agreement whether the sum is intended as a penalty or as liquidated damages, it will be construed as a penalty, because the law favors mere indemnity. Ibid. at 206, and see Monmouth Park Asso. v. Wallis Iron Works, 55 N.J.L. 132, 141 (E. & A. 1892).
I believe that a doubt exists in this case whether Paragraph 4(c) is a liquidated damage clause. While not necessarily decisive it will be noted that the descriptive words "liquidated damages" are not contained in the lease. Moreover, there is no statement that the damages arising from the breach of the lease would be difficult of determination and therefore the security deposit was agreed upon as liquidated damages.
*506 In my opinion when the parties entered into the lease they never intended that the security deposit would be the only damages recoverable upon breach of the lease. If they so intended they would not have provided for the recovery of damages by the lessor in Paragraph 23. That paragraph provides, in pertinent part, that upon the lessee's breach the lessor at its option (1) may sue to collect unpaid rent as it becomes due or (2) terminate the lease and recover damages for the cost of repossession and the difference between the amount of the rent reserved and the reasonable rental value of the premises for the remainder of the term of the lease or (3) without terminating the lease, the lessor could re-let the premises for the account of the lessee and hold the lessee accountable for losses sustained.
I do not agree that under the terms of the lease the lessor had an option or right to elect to retain the security deposit as liquidated damages for breach of the covenants of the lease. If the lease were so construed it would be inconsistent with the view that the parties adjusted in advance the damages which might arise by any breach of the contract and would be an additional factor tending to show that the sum deposited was not intended as liquidated damages. See Advance Amusement Co. v. Franke, 268 Ill. 579, 109 N.E. 471, 472 (Ill. Sup. Ct. 1915); Annotation, "Lease-Termination-Liquidated Damages," 106 A.L.R. 292, 300 (1937).
In support of their opinion the majority cites J.E. Hathaway & Co. v. United States, 249 U.S. 460, 39 S.Ct. 346, 63 L.Ed. 707 (1919). In that case a construction contract provided that in case of failure to complete the work within the time specified, the contractor would pay in addition to liquidated damages ($100 per day for each day of delay), "all expenses for inspection and superintendence." The court held there was no reason why the parties could not agree that certain elements of damage difficult to estimate should be covered by liquidated damages and other elements [of damage] should be ascertained "in the usual manner." It seems clear that Hathaway is factually distinguishable and *507 I believe establishes no guideline for determination of the instant case.
Since it appears that the parties did not intend that retention of the security deposit would constitute the sole damages recoverable by the lessor, Paragraph 4(c) cannot be construed as a liquidated damage clause.
I would reverse and remand the cause for a trial on the issue of damages sustained by the lessor.