152 N.J. Super. 321 (1977)
377 A.2d 1208
ROBERT L. ELLIS, PLAINTIFF,
v.
GEORGE LIONIKIS, TRUSTEE; AND STATE INSULATION CORPORATION PROFIT SHARING TRUST, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 13, 1977.
*323 Mr. Birger M. Sween for plaintiff.
Mr. Bruce S. Edington for defendants (Messrs. Kraft & Hughes, attorneys).
GELMAN, J.S.C.
The issue presented in this action is whether an employee's vested interest in a profit-sharing trust is subject to forfeiture solely because he engages in competitive employment following a discharge by his employer.
Robert Ellis was employed as a salesman by State Insulation Corporation (State) from September 9, 1966 until April 29, 1975. State is a New Jersey corporation, wholly owned by defendant George Lionikis, engaged in the distribution *324 and sale of insulation materials and accessories. In 1962 State established the State Insulation Corporation Profit Sharing Trust (Plan)
* * * to share a portion of its profits with certain of its employees, to promote in them the strongest interest in the successful operation of the business, and increased efficiency in their work, to assure them that they will share in the prosperity of the business, and to provide an opportunity for accumulation of funds for their retirement and financial emergencies.
Defendant Lionikis has been a trustee of the Plan since its inception, and at all times relevant here he and his wife have been the sole trustees of the Plan. The Plan consists solely of contributions made from time to time by State and contains the following provision:
If the Trustees find that any separated participant during the first two (2) years of his separation, is engaged in conduct prejudicial to the Company's interest or is engaged, directly or indirectly, or in any manner takes part in any business profession or other endeavor, either as an employee, agent, independent contractor, owner or otherwise, in the entire State of New Jersey  excluding Cumberland and Cape May Counties in New Jersey, and including, Staten Island, New York, [which] shall, in the opinion of the Directors of the company, be in competition with the business of the Company, which opinion of the Directors shall be final and conclusive for the purposes hereof and if after due notice, such separated participant continues to be so engaged, the Trustees shall suspend the payment of any further separation benefits to the separated participant.

* * * * * * * *
In the event a participant is charged with forfeiture of all benefits the Company shall be called upon to produce affirmative evidence to prove such charge beyond a reasonable doubt. The participant so charged shall be accorded the right to be heard, and to produce witnesses to deny such charge  the Trustees' decision shall be final.
The Plan further provides that in the event of separation from employment an employee forfeits a specified percentage of his accrued interest in the Plan, the percentage of forfeiture diminishing with the length of service. In the case of Ellis it has been stipulated that as an employee with eight *325 full years of service his vested interest at the time of his discharge was equal to 60% of his accrued interest in the Plan. Since the latter amount was $29,592.09 at December 31, 1974, the dollar value of his vested interest was $17,755.74, the recovery of which he seeks in this action.
The proofs at the trial disclosed that Ellis sold State's products to insulation contractors and industrial accounts primarily in northern New Jersey and to a limited extent in New York City and Long Island. He received a base salary against sales commissions, and in every year of his employment his commission income exceeded his base salary. During the last full year of his employment Ellis accounted for sales of $1,102,742, while the total sales of State in that year were $2,622,544.
Both Ellis and Lionikis described the insulation materials business as a highly competitive one. There are at least four major competitors of State in the geographic area in which it sells, as well as several smaller companies selling the same or similar products. Price and service to the customer are the most important factors in effecting a sale. State has enjoyed an excellent reputation for service, and its sales have increased each year since it was organized.
On April 29, 1975 Lionikis handed Ellis a letter notifying him that he was discharged effective as of that date because of dissatisfaction with his performance. The letter noted that Ellis would have a claim in the future to retirement benefits under the Plan, provided he did not violate the terms of the restrictive covenant set forth in the Plan. According to Ellis, Lionikis told him on this occasion that if "he [Ellis] even came close to competing" with State, he would lose his benefits under the Plan.
After his discharge Ellis sought other employment as a salesman outside of the insulation products field. He was unsuccessful in doing so, however, and on June 15, 1975 he began working as a sales representative in the New Jersey area for companies engaged in the distribution of insulation materials who were competitors of State. Since November 1, *326 1976 he has been working full-time for a company known as Clecon, Inc., which manufactures and distributes fibreglass laminated insulating materials similar to those sold by State. His sales territory for Clecon, Inc. consists of northern New Jersey, metropolitan New York City, all of Connecticut and northeastern Pennsylvania.
In July 1975 Lionikis received information that Ellis was working for State's competitors and on July 24, 1975 he requested written confirmation from Ellis as to his employment. On September 22, 1975 he sent a letter to Ellis informing him that the trustees of the Plan would conduct a hearing on October 3, 1975 to determine whether Ellis had forfeited his interest in the Plan. In the meantime, Ellis' attorney made demand upon Lionikis for the payment of Ellis' vested interest. The hearing originally scheduled for October 3 was eventually held on December 29, 1975, at which Lionikis and his wife were the only persons present. At the hearing Lionikis related information he had gathered from third persons to the effect that Ellis was calling on State's customers on behalf of competitors and had made sales to State's customers. The minutes of the hearing then recite:
Based upon the foregoing, the Trustees conferred and deemed that Mr. Robert L. Ellis was working for a competitor during the first two (2) years of his separation from State Insulation corporation in a manner prejudicial to the Company's interest and is engaged directly or indirectly and takes part in a business, profession or other endeavor in the State of New Jersey in competition with the business of State Insulation Corporation.
Accordingly, it was resolved that any and all benefits of Mr. Bob Ellis under the Trust, be and the same, are hereby denied.
Lionikis testified at the trial that total sales of State, as well as its sales in Ellis' territory, increased after Ellis' discharge. Lionikis could only identify one specific sale of $3,000 to $4,000 as having been lost because of Ellis' competition, and stated that one customer, who had purchased approximately $6,000 in 1974, had stopped doing business with State after Ellis' discharge.
*327 As previously indicated, Ellis' interest in the Plan as of December 31, 1974 was $29,592.09. The total assets of the Plan at that time amounted to $131,125.88, and Lionikis' accrued interest was $71,822.02. Besides Ellis and Lionikis, there were four other eligible employees in the Plan whose total accrued interest amounted to $29,711.77. Thus, by reason of the forfeiture of Ellis' vested interest, slightly in excess of 70% of the forfeited sum would accrue to the benefit of Lionikis.
For present purposes we may assume that the action of the Plan's trustees in declaring a forfeiture of Ellis's interest was not so tainted by their economic own self-interest as to occasion judicial review and disapproval. See Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 37 (1967). However slight the prejudice to State, the fact of the matter was that Ellis did accept employment with competitors of State within the two-year period proscribed in the Plan. The trustees complied literally with all procedural requirements prior to declaring a forfeiture; Ellis was given notice and an opportunity to be heard but chose not to attend the hearing. Evidence, even if not admissible in a court of law, was presented of his competitive employment, and this was sufficient to support the trustees' action.
It has been stated that pension plans must be liberally construed in favor of the employee, and forfeitures of pension rights are disfavored. Russell v. Princeton Laboratories, Inc., supra at 35. However, the issue here is not one of construing the terms of the Plan; its language is unmistakably clear as is its application to the facts of this case. Rather, plaintiff contends that the inclusion of a condition in the Plan restricting his future employment on pain of forfeiture of his pension benefits offends public policy and should not be permitted.
Were this an action by State to enjoin Ellis from competing in violation of a post-employment covenant, it is clear State would not be entitled to such relief under the standards laid down in Solari Industries, Inc. v. Malady, 55 *328 N.J. 571, 576 (1970), and Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 32-33 (1971). Ellis did not carry over into his new employment any trade secrets or confidential information, nor were his prior relationships with State's customers of any particular significance in gaining business on behalf of his new employers. In fact, State's sales in his territory increased after his departure. Ellis was simply one more salesman seeking orders in an industry which is admittedly highly competitive, and State's legitimate business interests would not be served by restraining him from competing with it. As noted in Whitmyer, supra at 33, an employer "has no legitimate interest in preventing competition as such" and in the factual context of this case a noncompetitive covenant would be viewed as unreasonable.
But State has never sought to restrain Ellis from competing with it. It acknowledges his right to do so and claims only a contractual right, under the terms of the Plan, to terminate benefits otherwise payable to him. It urges that this provision of the Plan represents liquidated damages reasonably related to State's loss because of Ellis' competitive activities. See Bradford v. New York Times Co., 501 F.2d 51, 56 (2 Cir.1974). And, it is said, the modern tendency is to look with favor upon liquidated damages provisions in agreements. See D.H.M. Industries v. Central Port Warehouse, 127 N.J. Super. 499, 503 (App. Div. 1973).
This is unquestionably a correct expression of the current judicial attitude, but its application to the facts of this case is fictional to say the least. The underlying rationale of enforcing liquidated damages clauses rests upon the proposition that a bargain struck by the parties after arms-length negotiation should be recognized and enforced where it represents a good faith effort to estimate in advance the damages which would be sustained by a party in the event of a breach. D.H.M. Industries v. Central Port Warehouse, supra at 503. Here there was never any negotiated agreement between Ellis and his employer; the Plan and its terms and conditions represented the unilateral act *329 of State's owner taken long before his employment commenced. Further, there was no attempt on State's part to show that the forfeiture provisions of the Plan represented a good faith effort to calculate the injury to it or the Plan from a former employee's competitive activities. Indeed, the proofs disclosed that State suffered at most de minimis damages as a result of Ellis' subsequent employment.
It would seem anomalous to say that a restrictive covenant which would not be enforceable by employer can be utilized by him to work a forfeiture of substantial economic benefits which were earned as an incident to the employment. If the covenant is unreasonable in the first instance, it is no less so in the second. Nevertheless, most of the jurisdictions which have had occasion to pass upon the question have sustained such forfeiture provisions. USAchem, Inc. v. Goldstein, 512 F.2d 163 (2 Cir.1975); Bradford v. New York Times Co., supra; Miller v. Asso. Pension Trusts, Inc., 396 F. Supp. 907 (E.D. Mo. 1975); Garner v. Girard Trust Bank, 442 Pa. 166, 275 A.2d 359 (Sup. Ct. 1971); Brown Stove Works v. Kimsey, 119 Ga. App. 453, 167 S.E.2d 693 (App. Ct. 1969); Flynn v. Murphy, 350 Mass. 352, 215 N.E.2d 109 (Sup. Jud. Ct. 1966); Kristt v. Whelan, 4 A.D.2d 195, 164 N.Y.S.2d 239 (App. Div. 1957), aff'd 5 N.Y.2d 807, 181 N.Y.S.2d 205, 155 N.E.2d 116 (Ct. App. 1958); cf. Barr v. Sun Life Assur. Co., 146 Fla. 55, 200 So. 240 (Sup. Ct. 1941), Contra, Muggill v. Reuben H. Donnelly Corp., 62 Cal.2d 239, 42 Cal. Rptr. 107, 398 P. 2d 147 (Sup. Ct. 1965).
Only one decision in this State has dealt with the issue, Evo v. Jomac, Inc., 119 N.J. Super. 7 (Law Div. 1972). Judge Larner there rejected the contention that a noncompetitive condition in a profit-sharing plan violated public policy. He accepted the reasoning advanced by courts in other jurisdictions that such provisions do not unreasonably restrain a former employee from earning a livelihood, but merely create a choice between compliance or the forfeiture of benefits he would otherwise have had. It may be noted, *330 however, that the actual result in Evo was based on Pennsylvania law, since the plan and the employment of the plaintiff originated in that State.
What may be deemed to be the leading case on the subject is Bradford v. New York Times Company, 501 F.2d 51 (2 Cir.1974). There the employer adopted an incentive compensation plan, with payment of accrued benefits to be made over a ten-year period following death or termination of employment. The plan provided for the right on the part of the trustees to terminate the payment of benefits if the former employee accepted employment in competition with the Times. After receiving his first annual instalment Bradford accepted competitive employment and the trustees terminated any further payments to him. While noting that the New York courts have often pronounced a vigorous public policy against the enforcement of employee restrictive covenants unless reasonable, the Court of Appeals found the inclusion of a noncompetitive condition in the plan presented no element of unfairness because benefits were payable to him so long as he abided by his promise not to compete, and his employer was thus furnishing continuing consideration for his loyalty and good will. That element is lacking in State's Plan, since the trustees of the Plan have the sole discretion to determine when and in what manner benefits will be paid to a former employee.
All of the reported decisions have dealt with forfeitures occurring prior to the enactment of the Employee Retirement Income Security Act (ERISA, or the Act), 29 U.S.C.A. § 1001 et seq. Congress enacted ERISA, to improve "the fairness and effectiveness of qualified retirement plans in their vital role of providing retirement income" and to ensure that the beneficiaries of such plans "do not lose their benefits as a result of unduly restrictive forfeiture provisions". H.R. Rep. No. 93-807, 93d Cong., 2d Sess. (1974), 3 U.S. Code Cong. & Admin. News, pp. 4670, 4676-7. Adequate provision for retirement income was described as "[o]ne of the most important matters of public policy facing *331 the nation today", ibid., and Congress has characterized employee benefit plans as "affected with a national public interest." 29 U.S.C.A. § 1001.
ERISA was enacted on September 2, 1974, and effective as of January 1, 1975 the Act preempted all state laws and decisions insofar as they may relate to employee benefit plans covered by it. 29 U.S.C.A. § 1144. The Act provides detailed requirements which employee benefit plans must meet and includes provisions prohibiting a forfeiture of employee benefits except as specifically permitted under its terms. 29 U.S.C.A. § 1053. Forfeiture for post-employment competitive activity is not permissible. As noted in H.R. Rep. No. 93-807, 93d Cong.2d. Sess. (1974), supra at pp. 4725-6:
* * * no rights, once they are required to be vested, may be lost by the employee under any circumstances * * *. For example, a vested benefit is not to be forfeited because the employee later went to work for a competitor, or in some other way was considered "disloyal" to the employer.
The anti-forfeiture provisions of ERISA are included in Part 2 of the Act which establishes minimum participation and vesting standards. The effective date of Part 2 was postponed to January 1, 1976, 29 U.S.C.A. § 1061, in order to allow additional time to employers to amend their plans to comply with the Act's vesting requirements. H.R. Rep. No. 93-807, 93d Cong.2d Sess. (1974) supra at pp. 4690, 4717, 4738.
While nothing in ERISA deals expressly with a forfeiture declared during the 1975 calendar year, the validity of such action must now be measured by federal law as embodied in the Act and not by prior state decisional law. The public policy declared by Congress in ERISA is unequivocal: forfeitures of pension benefits because of post-employment competitive activity are no longer permissible. There is no sensible reason why that policy should not be applied to a forfeiture declared but two days before Part *332 2 of the Act became effective. The delay in implementation Part 2 had nothing to do with the manifest Congressional purpose to void such forfeitures, and the mandate reflected in ERISA's legislative history as well as in § 1053 dictates that forfeitures declared prior to the effective date of Part 2 should be invalidated where in conflict with Congressional policy. It is, after all, the judicial task "to administer the spirit as well as the letter of the law." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 403 (1960). See also Shell Oil Co. v. Marinello, 120 N.J. Super. 357, 375 (Ch. Div. 1972).
It is therefore held that the action of the trustees of the Plan in declaring a forfeiture of Ellis' vested interest was invalid. However, this conclusion does not occasion the entry of a money judgment in Ellis' favor. Under the terms of the Plan the trustees have discretion to determine whether a separated employee shall be paid his vested interest in a lump sum or in installments, held in the trust until he reaches normal retirement age, or used to purchase paid-up annuity insurance. For obvious reasons the trustees here never exercised their discretion with respect to the disposition of Ellis' interest and until such action is taken by them he has no present claim to receive that sum. Accordingly, judgment will be entered declaring that Ellis has a vested interest of $17,755.74 in the Plan, together with accumulated income attributable to his interest to date, and directing the trustees to make a determination pursuant to the Plan within 30 days as to the disposition of Ellis' interest. The counterclaim of defendants is dismissed, and costs are allowed to the plaintiff.