**SHREE GANESH, INC.,
et al., Plaintiff,**

v.

**DAYS INNS WORLDWIDE,
INC., Defendant.**

**Case No. 3:99 CV 7483.**

United States District Court,
N.D. Ohio,
Western Division.

March 21, 2002.

---

Peter R. Silverman, Mark D. Wagoner, Jr., Shumaker, Loop & Kendrick, Samuel B. Morrison, Law Offices of Samuel B. Morrison, Toledo, OH, for Plaintiff.

Kenneth W. Hubbard, Kaufman & Cumberland, Steven A. Goldfarb, Nancy Anne Oliver, Hahn, Loeser & Parks, Cleveland, OH, for Defendant.

### MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Plaintiff's motion for partial summary judgment (Doc. No. 101) and Defendant's motion for summary judgment (Doc. No. 104). This Court has jurisdiction pursuant to 28 U.S.C. § 1332. For the following reasons, Plaintiff's motion will be granted, and Defendant's motion will be granted in part and denied in part.

### BACKGROUND

#### I. The Hotel

This is a dispute over a hotel licensing agreement. Plaintiff Shree Ganesh, Inc., is an Ohio corporation that owns and operates a former Days Inn Hotel (the "Hotel") located within view of I–75 on Manhattan Boulevard in Toledo, Ohio. Two of the principal shareholders in Shree Ganesh, Inc., are Pashabhai "Perry" Patel and Dipak "Dean" Patel, both of whom are citizens of Ohio and third-party defendants in this action. Defendant Days Inn Worldwide, Inc. ("DIW"), formerly Days Inn America, Inc., is one of the largest hotel franchisors in the world. DIW has the exclusive right to sublicense various service marks and trade names; through this licensing system, DIW markets, promotes, and provides other services to franchisees.

Shree Ganesh purchased the then-unaffiliated Hotel in December 1993, and was approached in late 1993 and early 1994 by a representative of DIW who suggested that they obtain a license to operate as a Days Inn. Although the Patels were unrepresented by counsel and claim they were initially reluctant to enter into such an agreement with DIW, on March 17, 1994 the parties reviewed a draft license agreement. The Patels claim that because they were so reluctant to enter an agreement, representatives of DIW "strongly suggested" that they would experience a sixty percent occupancy rate when utilizing the advantages brought by association with DIW. DIW acknowledges that it represented that such a rate was possible when it sent the Patels the Days Inn Uniform Franchise Offering Circular ("UFOC") in February 1994, though the UFOC disclaims any guarantee that the rate would be achieved.

On April 4, 1994, Perry Patel and representatives from DIW had a telephone conversation in which they negotiated terms for a license agreement. During this conversation, the parties agreed that Shree Ganesh would have the right to terminate the license agreement after five years upon six months' notice. The parties also agreed that Shree Ganesh would be obligated to pay a lower than normal royalty

rate and initial entry charge. That same day DIW faxed a number of "slip pages" to its representative. These pages included the changes that would be made to DIW's customary license agreement as a result of the telephone conversation.

The next day, the DIW representative met with the Patels at the Hotel. He brought with him three copies of the License Agreement (the "Agreement"), each of which included the changes made on the "slip pages." Because Perry Patel had recently had eye surgery, he requested that the representative read certain provisions of the Agreement aloud for him, and the representative did. The parties disagree how much of the Agreement was actually read aloud.

In conjunction with the Agreement, Perry and Dean Patel each signed a personal guaranty for Shree Ganesh's obligations under the Agreement. DIW signed the Agreement on May 17, 1994.

## II. The Agreement

The Agreement had a fifteen year term. Shree Ganesh paid an initial licensing fee of seventeen thousand five hundred dollars ($17,500) and a reservation system fee of ten thousand dollars ($10,000). The Agreement contained a number of other important provisions:

1. Section 5(b) of the Agreement permitted DIW to conduct up to four quality assurance inspections per year, with more permitted if the Hotel failed an inspection.

2. Section 8 and Schedule C of the Agreement required the payment of "Recurring Fees" including royalties, taxes, service assessments, interest, reservation system user fees, and annual conference fees.

3. Section 9(a) of the Agreement allowed DIW to terminate the Agreement, after proper notice had been given for a number of reasons, including (a) failure to pay any amount due under the Agreement; (b) failure to remedy any default under the Agreement within thirty days after notice of the default; and (c) receipt of two or more notices of default under the Agreement in any one year, even if the defaults were cured.

4. Section 20(a) required Shree Ganesh to pay liquidated damages to DIW in accordance with a formula in the Agreement in the event of breach.

5. Section 22(c) allowed Shree Ganesh to terminate the Agreement without penalty after five or ten years, provided it was not in default.

6. Section 28 stated that the law of New Jersey governs the Agreement.

## III. Operation of the Hotel

The parties agree that the Hotel was unsuccessful. Between 1995 and 1999, the hotel's yearly occupancy rate was over ten percent only once. During this time Shree Ganesh paid over $89,000 in Recurring Fees. The Hotel also passed all Quality Assurance Inspections up to and including the one conducted on June 8, 1998. Dissatisfied with their relationship with DIW, the Patels considered having Shree Ganesh exercise the five-year termination provision in the Agreement in September 1999.

On September 3, 1998, the Hotel failed a Quality Assurance Inspection. Consequently, DIW sent Shree Ganesh a letter on September 30, 1998, informing Shree Ganesh that it was in default of the Agreement and requesting that it cure the default within thirty days.

Another Quality Assurance Inspection was conducted on November 30, 1998. Again, the Hotel failed the inspection. Shree Ganesh claims that the Hotel should

have passed this inspection, but that improper deductions were made for a substandard billboard and lack of a carousel at the front desk. Shree Ganesh claims that other DIW franchisees were not penalized for not having a carousel, and that the sign deduction should have been retroactively eliminated after the sign was repainted. Because of this second failure, DIW sent Shree Ganesh a letter informing it that it was suspended from use of the reservation system. Shree Ganesh alleges that following this suspension DIW actively looked for a "replacement" franchisee in the Toledo area.

In February 1999, counsel for Shree Ganesh wrote to DIW and expressed an interest in terminating the Agreement without penalty. DIW claims that this letter also acknowledges that the early termination without penalty provision was void because of Shree Ganesh's continued default of the Agreement.

On March 1, 1999, the Hotel failed its final Quality Assurance Inspection, and on March 5, DIW informed Shree Ganesh that the Agreement was subject to immediate termination. Shree Ganesh claims that this Quality Assurance Inspection also contained questionable deductions that DIW could have waived but did not.

On June 17, 1999, DIW received a franchise application from a hotel on Miami Street in Toledo, Ohio. Twelve days later, on June 29, 1999, DIW informed Shree Ganesh that the Agreement had been terminated and requested that Shree Ganesh pay liquidated damages and accrued Recurring Fees.

Shree Ganesh filed the instant action in the Lucas County Court of Common Pleas on July 9, 1999, and the case was removed to this Court. On July 3, 2000, Shree Ganesh filed its amended complaint (improperly captioned "Second Amended Complaint"), alleging fraud, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and unjust enrichment, and requesting equitable reformation of the contract and a declaratory judgment that it had properly terminated the Agreement. DIW filed a counterclaim against Shree Ganesh for liquidated damages, attorneys fees, and accrued Recurring Fees. DIW also filed a third-party complaint against the Patels, claiming that they were responsible under their guaranty agreements for any amounts owed by Shree Ganesh. DIW has filed a motion for summary judgment as to all of its claims, and Shree Ganesh and the Patels have filed a cross-motion for partial summary judgment as to the validity of the Liquidated Damages clause in the Agreement. The motions have been fully briefed and are ripe for review.

## DISCUSSION

### I. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91

L.Ed.2d 202 (1986) (*quoting* Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

## II. Choice of Law

The parties agree that pursuant to Section 17.5 of the Agreement, the Agreement is governed by the substantive law of New Jersey.

## III. Defendant's Motion for Summary Judgment on the Amended Complaint

The Defendant has moved for summary judgment on all counts of amended complaint and on its own counterclaim for damages.

### A. Fraud

■ Because the failure of Shree Ganesh's fraud claim could adversely affect other allegations they have made, Count II of their amended complaint must be addressed first. In Count II, Shree Ganesh alleges that it was fraudulently induced to enter into the Agreement by two represen-

tations made my DIW and its representatives. First, Shree Ganesh alleges that DIW misrepresented the ability of Shree Ganesh to terminate the Agreement after five years. Second, Shree Ganesh avers that DIW misrepresented that affiliation with DIW would allow Shree Ganesh to increase their hotel's occupancy rate to more than sixty percent.

■ To prevail on a claim of fraud, the plaintiff must show (1) that the defendant made a representation; (2) of a material fact; (3) that was false; (4) that was known to be false by the defendant when it was made; (5) that was made to induce the plaintiff to rely on the misrepresentation; (6) that the plaintiff actually and reasonably relied on the misrepresentation; and (7) that the plaintiff suffered injury as a result. *See Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 432 A.2d 521, 524 (1981).

In its motion for summary judgment, DIW argues that it had no duty to disclose any of the terms of the Agreement after it was presented to Shree Ganesh for execution. Further, DIW contends that even if it did have a duty to disclose the particular details of the early termination agreement, that duty was satisfied, and any past representation negated, when a DIW representative read the following portion of Section 29(c) of the Agreement to both Perry and Dean:

Licensee shall have the right to terminate the license without cause effective only on the fifth and tenth anniversary of the opening date provided it has first given the company at least six months written notice of termination and is not in default under this agreement at the time notice must be given or at the effective date of termination. Licensee shall be liable to pay no liquidated damages if the license is terminated in accordance with the preceding sentence and

Licensee performs the post-termination obligations specified in this Agreement within 10 days after the effective date of termination.

(Dipak Dep. at 186).

DIW does not assert, however, that its representative read to Perry Patel the conclusion of Section 22(c), which provides:

Licensee's rights under this paragraph shall automatically terminate without notice if and as of the date: (i)[DIW] sends to Licensee a notice of termination under this Agreement, or the Licensee automatically terminates, or the Company sends Licensee a notice of default and Licensee fails to cure the default within the time permitted, if any, in the notice of default or, (ii) after the Facility achieves the 425 Quality Assurance Inspections score required to satisfy the Improvement Obligation, the Facility receives a Quality Assurance Inspection score of less than 425 (or its then equivalent) and the Facility fails to achieve a Quality Assurance Inspection score of at least 425 and a re-inspection to be performed not less than thirty days after the initial inspection.

Shree Ganesh admits that a DIW representative read a portion of the Agreement to Perry because he was unable to read it himself due to recent cataract surgery; however, Shree Ganesh denies that a representative of DIW ever informed Perry and Dean that their ability to withdraw from the Agreement was subject to any condition other than the six-month notice requirement. In support of this assertion Shree Ganesh has attached to its opposition to summary judgment the affidavit of Perry Patel, who states, "Days Inn and I agreed that we would sign the License Agreement only if we had a right to terminate it after five years, so long as we gave six months notice.... [A DIW representative] read some of the new terms of the License Agreement, but did not read that

our right to terminate the agreement after five years could be lost." (Doc. No. 123, Exh. 1).

DIW also argues that any evidence that it made oral or written representations that contradicted or modified the Agreement is barred by the Agreement's integration and merger clauses and by the parol evidence rule. Section 22(b) of the Agreement, the merger clause, states:

Neither [DIW] nor any other person on [DIW's] behalf has made any oral or written representation to Licensee not fully set forth herein on which Licensee has relied in entering into this Agreement, and Licensee releases any claims against [DIW] or its agents based upon any oral or written representation not set forth herein.

Similarly, the integration clause, set forth on page 23 of the Agreement, states, "This Agreement, together with all instruments, exhibits, attachments and schedules hereto, constitutes the entire agreement (superceding all prior representations, agreements, and understandings, oral or written) of the parties hereto with respect to the Facility."

■ The parol evidence rule prohibits "the introduction of oral promises to alter or vary an integrated written instrument...." *Ocean Cape Hotel Corp. v. Masefield Corp.,* 63 N.J.Super. 369, 164 A.2d 607, 611 (1960). Shree Ganesh claims that the parol evidence rule is not applicable in this case because it may not be used to bar evidence used to show misrepresentation or fraud in the execution of a contract. *See Christie v. Lalor,* 116 N.J.L. 23, 181 A. 312 (1935).

■ The exception that Shree Ganesh proposes be applied to the parol evidence rule is a limited one. "Extrinsic evidence to prove fraud is admitted because it is not offered to alter or vary express terms of a

contract, but rather, to avoid the contract or to prosecute a separate action predicated upon the fraud." *Filmlife, Inc. v. Mal "Z" Ena, Inc.*, 251 N.J.Super. 570, 598 A.2d 1234, 1235 (1991) (internal quotations omitted). Furthermore, "[t]here is a distinction between fraud regarding matters expressly addressed in the integrated writing and fraud regarding matters wholly extraneous to the writing." *Id.* at 1236. This case involves the former, because the subject of early termination is addressed in the agreement.

Because of the integration and merger clauses, the parol evidence rule bars introduction of a prior agreement between the parties, whether that agreement involved early termination or potential occupancy levels. Shree Ganesh is therefore unable to put forth evidence to satisfy the first element of its fraud claim, and the Court need not consider other arguments made in support of the claim. Summary judgment will be granted in favor of DIW on Count II of the amended complaint.

### B. Negligent Misrepresentation

■ In Count III of the amended complaint Shree Ganesh alleges that DIW had a duty to disclose to Shree Ganesh the details of the right to terminate the contract and the infeasibility of the sixty percent occupancy rate; Shree Ganesh has attempted to modify this count in its response to DIW's motion for summary judgment by claiming that the negligent misrepresentation was the result of affirmative statements. DIW claims that it had no duty to disclose information to Shree Ganesh, and that even if some duty existed, no inaccurate information was ever provided.

New Jersey has adopted the § 552 of the Restatement (Second) of Torts to define negligent misrepresentation:

> One who, in the course of his business, profession or employment, or in any oth-

er transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused by them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

RESTATEMENT (SECOND) OF TORTS § 552 (1977) (adopted in *Petrillo v. Bachenberg*, 139 N.J. 472, 655 A.2d 1354, 1360 (1995)).

Even assuming that DIW provided false information to Shree Ganesh, this count must fail because Shree Ganesh has not put forth any evidence tending to show that DIW failed to exercise reasonable care in obtaining or communicating the information. When taken in a light most favorable to Shree Ganesh, all that the evidence they have produced shows is that representations were made and that they later proved to be untrue. Those two factors do not give rise to the conclusion that the obtaining and communicating were negligently done.

As an aside, the Court notes that Count III of the amended complaint contains language that incorporates all prior allegations of the amended complaint. Because these allegations include the affirmative fraud claim in Count II, even if Count III did not fail on the merits it might well fail on the pleadings due to allegations that the conduct was intentional rather than negligent.

### C. Equitable Reformation

■ In Count I of the amended complaint, Shree Ganesh alleges that it negotiated an agreement with DIW that allowed for termination of their agreement after five years with no other conditions, but that DIW unilaterally included terms that made termination difficult. Shree Ganesh also claims that prior to the signing of the

Agreement it was not given sufficient time to review the document, as required by 16 C.F.R. 436.1(G), which allows five days for review by the potential franchisee. Further, Shree Ganesh avers that when the termination provision was read to Perry Patel the representative of DIW purposely omitted the second half of the clause that contained the restrictive provisions. Because of this alleged inequitable conduct on behalf of DIW and its representatives, Shree Ganesh has requested that the Agreement be equitably reformed to excise the clause that eliminates the right of termination if Shree Ganesh is in default of any other part of the agreement.

DIW has opposed equitable reformation. It argues that equitable reformation is not warranted because there is insufficient evidence that DIW committed fraud or other inequitable conduct.

■■■ New Jersey law permits equitable reformation of a contract "in a case of mistake of one party, accompanied by fraud or other inequitable conduct by the other party." *Volker v. Connecticut Fire Ins. Co.*, 22 N.J.Super. 314, 91 A.2d 883, 887 (1952). All that is required for equitable reformation is a showing of equitable fraud or other inequitable conduct. *See Bonnco Petrol, Inc. v. Epstein*, 115 N.J. 599, 560 A.2d 655, 660 (1989).

■■■ DIW argues that it did not act inequitably because any change in the Agreement would have been obvious if a representative of Shree Ganesh had bothered to read the document. A party is generally bound by a contract it has signed, even if the party has not read the contract. *See Winoka Village v. Tate*, 16 N.J.Super. 330, 84 A.2d 626 (1951). One exception to that rule, however, occurs when one contracting party relies on the other contracting party to put into writing the details of a contract that has already been orally agreed upon. *See Bonnco Petrol, Inc.*, 560 A.2d at 661.

Equitable reformation is not called for here. As noted above in Section III(A) of this opinion, Dean Patel stated during his deposition that the representative from DIW read to Perry and Dean a part of the Agreement that included at least a portion of the more restrictive termination clause. Even if, as he claims in his affidavit, Perry Patel was unaware of the less-than-optimal clause, Dean was clearly on notice of the change and had the opportunity to examine the Agreement further, but he did not. Shree Ganesh's contention that DIW's failure to submit the Agreement for their inspection within the time required by 16 C.F.R. § 436.1(G) should lead to reformation is also without merit. Although the changed provisions of the Agreement do contain sections that are advantageous to DIW, Shree Ganesh's ability to terminate the Agreement is of far greater importance, and such an extreme remedy as reformation is unwarranted. The Court will not substitute a contract of its own creation for that agreed to by the parties.

D. Implied Covenant of Good Faith and Fair Dealing

■■■ In Count IV of the amended complaint, Shree Ganesh claims that DIW breached the implied covenant of good faith and fair dealing that arose from the Agreement. The breach allegedly occurred due to DIW's failure to make good faith evaluations of Shree Ganesh after learning of Shree Ganesh's possible desire to terminate the Agreement. Shree Ganesh also avers that the covenant was breached because DIW terminated the Agreement after it realized that termination would allow it to enter into another more profitable franchise agreement with the Miami Street franchisee but still collect liquidated damages from Shree Ganesh. DIW argues that Shree Ganesh can not put forth any evidence to show that the covenant was breached.

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 575, 587 (1997). This covenant ensures that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (citations and quotations omitted).

The claims brought by Shree Ganesh implicate two forms of the implied covenant of good faith and fair dealing. Because the evaluation process vested discretion in DIW to make decisions involving the ongoing contract, this alleged breach is most similar to those involving the ability of one party to a contract to set a price for the other. In *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 773 A.2d 1121 (2001), the New Jersey Supreme Court set forth the test for determining whether the implied covenant had been breached:

[A] party exercising its right to use discretion in setting price under a contract breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract. Such risks clearly would be beyond the expectations of the parties at the formation of a contract when parties reasonably intend their business relationship to be mutually beneficial. They do not reasonably intend that one party would use the powers bestowed on it to destroy unilaterally the other's expectations without legitimate purpose.

*Id.* at 1130.

Bad-faith termination, the second form of breach of the covenant, was recognized in *Sons of Thunder, supra.* "[A] party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate." *Sons of Thunder*, 690 A.2d at 588. Such a breach may occur even if there has been no breach of any of the express terms of the contract. *See id.*

Here, Shree Ganesh has put forth evidence to show that it began to receive poor quality assurance scores at approximately the same time that DIW became aware that it intended to terminate the Agreement. It has also offered evidence to show that other hotels received discretionary relief from quality point deductions that it did not receive, and it has offered at least a small amount of evidence that DIW terminated the agreement only upon securing a replacement facility.

DIW contends that the deductions are valid, and that there is evidence to show that Shree Ganesh did not even attempt to comply with the quality requirements. Furthermore, DIW claims that any claim of breach of the implied warranty is eliminated by a letter from counsel for Shree Ganesh, because the letter indicated that Shree Ganesh anticipated a third failing quality assurance score.

The evidence offered by DIW, though it may be persuasive, does nothing more than cast doubt upon the credibility of assertions used to draw the possible conclusion that the covenant was breached. That is insufficient to allow summary judgment. The claim of breach of duty of good faith survives, both as to the quality assurance evaluations and as to the termination of the Agreement. DIW's motion for summary judgment will be denied on Count IV of the amended complaint.

### E. Unjust Enrichment

On December 16, 1998, DIW suspended Shree Ganesh's use of the central DIW reservation system. Between January 1999 and June 1999, DIW received two

thousand six hundred and ninety-nine dollars and four cents ($2,699.04) in fees for use of the system from Shree Ganesh. In Court V of the amended complaint, Shree Ganesh claims that this payment unjustly enriched DIW, because Shree Ganesh did not receive any benefit from the reservation system and there is no provision in the Agreement for the continued payment of reservation fees following a suspension. DIW argues that the Agreement does not allow an offset of fees if use of the reservation system is suspended. Additionally, the Agreement prohibits Shree Ganesh from bringing any claims against DIW based on proper removal from the reservation system.

■■ "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519, 526 (1994). Review of the portion of the Agreement requiring payment of the fees, Section 8(a)(ii), indicates that there is no option that allows payment of the reservation fees to be suspended while the franchisee is in default. Shree Ganesh has not attempted to make any other showing that it expected to be able to cease the reservation payments while suspended, either. Summary judgment will be granted in DIW's favor on Count V of the amended complaint.

### F. Equitable Estoppel—Franchise Policy

In its opposition to summary judgment, Shree Ganesh conceded that summary judgment in favor of DIW is appropriate on Count VI of the amended complaint, its equitable estoppel argument.

### G. Declaratory Judgment

In the final count of the amended complaint, Shree Ganesh requests a declaratory judgment that it properly terminated the Agreement. This request is based on Shree Ganesh's claim that equitable reformation is necessary. Because summary judgment was granted in favor of DIW on that claim, it must be granted in favor of DIW on this claim as well.

### IV. Cross–Motions for Summary Judgment—Liquidated Damages

■■ Both parties have requested summary judgment on the enforceability of the liquidated damages clause of the Agreement, Section 20(A). In its motion for summary judgment, Shree Ganesh claims that the stipulated damages clause in the Agreement is an unenforceable penalty clause. Section 20(A) of the Agreement provides:

> If this Agreement terminates by action of the Licensee ... Licensee shall pay the Company within 30 days following the date of such event, as Liquidated Damages, because actual damages incurred by the Company will be difficult or impossible to ascertain, but not as a penalty, in an amount equal to the sum of accrued Recurring Fees during the the immediately preceding 24 calendar months (or such shorter period as equals the unexpired prior term of the date of termination, without regard to the express right to terminate the License Agreement prior to the expiration of the term).... Licensee shall also pay any applicable Taxes assessed on such payment. Notwithstanding the foregoing, in no event shall the amount payable pursuant to this Section be less than the product of $2,000 multiplied by the number of guest rooms in the facility. Payment of Liquidated Damages shall be in

addition to the Company's other rights under this Agreement.

(Doc. No. 120, Exh. A).

As noted above, "Recurring Fees" are a combination of royalty, marketing, and reservation fees. Though the parties dispute the actual amount, over the twenty-four months preceding the termination of the licensing agreement, the Recurring Fees paid by Shree Ganesh was approximately forty thousand dollars ($40,000). This is far less than the amount that Shree Ganesh would be required to pay, two hundred and six thousand dollars ($206,-000), when the liquidated damages amount is calculated as the product of the number of rooms in the Hotel (103) and two thousand dollars ($2,000).

 New Jersey law gives favorable treatment to liquidated damages clauses. *See D.M.H. Indus., Inc. v. Central Port Warehouses, Inc.*, 127 N.J.Super. 499, 318 A.2d 20, 22–23 (1973). Such a clause is valid where it "constitutes a reasonable forecast of the provable injury resulting from the breach," and where harm "is incapable or very difficult of accurate estimate." *Wasserman's, Inc. v. Middletown*, 137 N.J. 238, 645 A.2d 100, 106–07 (1994).

 The reasonableness of a stipulated damages clause, and therefore whether it is enforceable, is a matter of law for determination by the court. *See id.* at 110. The court is required to make a reasonableness assessment based on conditions existing at both the time of the breach and at the time of contract formation. *See id.* at 107. When considering reasonableness, the court should consider "the difficulty in assessing damages, the intention of the parties, the actual damages sustained, and the bargaining power of the parties." *Metlife Cap. Fin. Corp. v. Washington Ave. Assoc.*, 159 N.J. 484, 732 A.2d 493, 497 (1999). Because they are favored, stipulated damages clauses are presumptively valid, and the burden is on the party opposing enforcement to show that the clause is not reasonable. *See Central Steel Drum Co. v. Gold Cooperage, Inc.*, 200 N.J.Super. 251, 491 A.2d 49, 57 (1985), *overruled on other grounds, Kutzin v. Pirnie*, 124 N.J. 500, 591 A.2d 932 (1991).

Here, consideration of Section 20(A) of the Agreement leads this Court to find that the clause is unreasonable and is therefore an unenforceable penalty. The Court recognizes that the damages are not easily assessable, particularly in light of the many variables that must be considered in the hotel industry. Additionally, Shree Ganesh has offered neither evidence nor argument to show that the intention of the parties was that they not enter into or enforce the damages clause in the agreement.

Shree Ganesh has failed to show that the liquidated damages clause arose from a lack of bargaining power on its part. First, there is no indication that the Patels were not free to negotiate with another hotel franchisor. Second, the Patels clearly had some bargaining power, because the record unequivocally indicates that some of the provisions in the agreement were the result of negotiation. Finally, the Patels' failure to secure legal representation when entering into a sophisticated and long-term agreement is not indicative of a lack of bargaining power.

Although three of the four aspects of the reasonableness consideration weigh in favor of a finding of validity, the final factor, actual damages sustained, does not. While Shree Ganesh's contention that DIW suffered no damages at all from the termination due to the opening of the similar Miami Street franchise is a bit overstated, the Court is swayed by the undisputed fact that the amount of damages as calculated based on the number of rooms is approxi-

mately five times the amount that would have resulted if the calculation were based on Recurring Fees.[1] This is clearly excessive.

DIW has offered a number of arguments as to why the damages clause is reasonable. It argues that the amount calculated using the Recurring Fees is not representative of the actual amount that it lost because the Recurring Fee amount was artificially low due to Shree Ganesh's failure to comply with quality assurance standards. That argument fails to take into account, however, that the twenty-four months used to calculate the fees included many months in which Shree Ganesh had acceptable quality assurance scores; in fact, there is no appreciable difference between the Recurring Fees due for the time in which Shree Ganesh did not have a passing score and any other time while the Agreement was in effect.

DIW also argues that the clause should be enforced because a number of other courts, including one in this division, have found that the clause is reasonable. *See Ramada Franchise Sys., Inc. v. Hanna Hotel Enter.*, 147 F.Supp.2d 840 (N.D.Ohio 2001) (Carr, J.); *see also Ramada Franchise Systems, Inc. v. Polmere Lodging Corp.*, No. 98–2809 (D.N.J. July 30, 1999); *Days Inns of America, Inc. v. VNR, Inc.*, No. 98–2507 (D.N.J. Mar. 23, 1999). This argument fails, however, because examination of those cases reveals that, if the franchisee attempted to satisfy his burden at all, the decision was based on the particular facts of the case.

The stipulated damages clause, Section 20(A) of the Agreement, is unenforceable, and Shree Ganesh's motion for partial summary judgment as to the validity of the liquidated damages clause will be

granted. Summary judgment will also be entered in favor of Shree Ganesh and the Patels on Count III of DIW's counterclaim and third-party complaint, which requested damages based on the liquidated damages clause. Because it is unenforceable, Section 20(A) of the Agreement must be stricken, and DIW will be required, at trial, to prove actual damages sustained, assuming that the jury finds in its favor on the issue of liability.

## V. DIW's Motion for Summary Judgment on the Counterclaim

Finally, DIW has requested summary judgment on Count III through Count VI of its amended counterclaim and third-party complaint against Shree Ganesh and the Patels.[2] This Court has already determined that summary judgment should be entered in favor of Shree Ganesh and the Patels on Count III of the amended counterclaim, and that issue need not be revisited here.

In Count V of the amended counterclaim, DIW alleges that Shree Ganesh failed to pay Recurring Fees in the amount of six hundred and thirty-nine dollars and thirty-five cents ($639.35). In response, Shree Ganesh submitted an affidavit from Perry Patel, who attested that all such fees had been paid. That is sufficient to prevent summary judgment.

In Count IV of the amended counterclaim, DIW alleges that Shree Ganesh is liable for damages and fees as a result of its breach of the Agreement, and in Count VI it avers that the Patels are liable for those damages and fees because of their guaranty agreements. Summary judgment on these claims is prevented by the necessity of jury resolution of Shree Gan-

---

1. This is the case no matter which party's Recurring Fees value is used.

2. Counts I and II involve unauthorized use of the DIW mark. Neither party has addressed those counts in a motion for summary judgment.

esh's claim that DIW breached the implied covenant of good faith and fair dealing.

### CONCLUSION

For the foregoing reasons, Shree Ganesh's motion for partial summary judgment (Doc. No. 101) will be granted. Summary judgment will be entered in favor of Shree Ganesh and the Patels on Count III of Defendant's amended counterclaim, and Section 20(A) will be stricken from the Licensing Agreement.

Defendant's motion for summary judgment (Doc. No. 104) will be granted in part and denied in part. Summary judgment will be entered in favor of the Defendant on Counts I, II, III, V, VI, and VII of the Plaintiff's amended complaint. Summary judgment will be denied on Count IV of Plaintiff's amended complaint and as to all Counts of Defendant's amended counterclaim and third-party complaint.

IT IS SO ORDERED.